[No. 18840. Department Two. March 12, 1925.]

E. N. FITCH, *Respondent,* v. O. D. MILES, *Appellant.*[1]

FRAUD (8)— MISREPRESENTATIONS — MEANS OF KNOWLEDGE — EVI-DENCE—SUFFICIENCY. Findings that the purchaser of semi-arid lands was not misled by false representations of the vendor relating to water rights and sub-irrigation are sustained, where it appears that he thereafter made his own investigation and learned that there were no water rights and no artificial irrigation connected with the place, and for that reason held up for ·a time the money which he afterwards sought to recover, and he had ample opportunity to with-draw from the deal.

Appeal from a judgment of the superior court for Okanogan county, Neal, J., entered February 10, 1923, upon findings in favor of the plaintiff, in an action for possession and to quiet title, tried to the court. Affirmed.

*P. D. Smith,* for appellant.

*Revelle, Revelle & Kells,* for respondent.

MITCHELL, J.—On January 27, 1921, E. N. Fitch, as vendor, and J. W. Fuller and Ed Fuller, as vendees, entered into an executory real estate contract for the sale ·of 278 acres of land in Okanogan county. The price agreed on was $6,160, of which $700 was paid on that date. Three hundred dollars was to be paid on or before three months, and the balance, with interest, was to be paid annually by a certain share of the crops to

[1]Reported in 233 Pac. 916.

be raised on the place and marketed by the vendees, who were also to pay all the subsequent taxes and keep the buildings insured. Time was made of the essence of the contract, which further provided that, in case of the failure of the vendees to make the payments as specified, the contract should be forfeited at the election of the vendor, in which event all payments that had been made should be retained by him as liquidated damages, and that he should have the right of reentry and possession of the lands. The Fullers were put in possession at the date of the contract. They assigned all their rights under the contract to O. D. Miles and put him in possession of the lands. The $300 due April 27, 1921, not having been paid, although demanded, the vendor, on August 5, 1921, orally and in writing demanded that Miles fulfill the terms of the contract or vacate the premises. Upon his failure to do either, the vendor, on August 10, 1921, served notice in writing on him, electing and declaring the contract forfeited unless the terms of it were complied with by August 20, 1921. Miles continued to neglect and fail to make payment and refused to vacate the premises. Thereupon this action was instituted by Fitch against the Fullers and Miles for a judgment declaring the plaintiff to be the owner of the premises free and clear of any right or interest on the part of the defendants, that the possession of the premises be restored to him, and for the rental value of the premises from August 20, 1921.

O. D. Miles appeared and by his answer alleged, in effect, that in the early summer of 1921, at Portland, Oregon, the plaintiff represented to him that the Fullers had become discouraged and were about to forfeit their contract; that, by many false and fraudulent representations, which were set out in the answer, as to the character, quality and value of the lands,

known by plaintiff to be false and intended by him that they should be relied on, the plaintiff led and induced him to purchase from the Fullers all their rights under the contract; that, believing the representations made by the plaintiff to be true and acting thereon, he paid the Fullers $700 for their contract rights, $97 taxes against the place, and had been damaged in the sum of $240 for time and labor needlessly spent on the place by him, in which amounts he demanded judgment against the plaintiff, who by a reply denied all the allegations of fraud and misrepresentations. On the trial the court entered findings, conclusions and a decree in favor of the plaintiff, freeing the land from the contract, giving him possession, and awarding damages against Miles in the sum of $1 for the unlawful withholding of the premises. Defendant Miles has appealed.

The first six findings cover the making of the contract, possession given thereunder to the Fullers, the assignment by them of their rights to Miles, default in the payment of $300, notice to pay or forfeiture would be claimed, declaration of forfeiture and the continued possession of the property by Miles. The controversy here is mostly over the other findings and the conclusions of law made by the court. Finding number VII is that the respondent and appellant met in Portland in January, 1921, where they had various conversations in regard to the lands, that appellant became interested in them and in the proposition of buying the contract held by the Fullers. It then states:

"That plaintiff represented to the said defendant Miles, that said lands had a water right from Tunk Creek and that there was plenty of water to irrigate all the lands lying along the creek, approximately six acres, but that all of the farm lands were sub-irrigated and did not need surface irrigation; that said land was worth twenty-seven dollars per acre and after several

conversations relative to the property, said Miles informed plaintiff that he, the defendant, Miles, would not take over said contract without seeing and making an examination of the land and soon thereafter began to prepare to visit the premises and before leaving Portland, plaintiff stated to said defendant that the neighbors up there did not like him, the plaintiff, and advised said defendant to pay no attention to anything the neighbors might say in regard to the land.''

Other findings are as follows:

''VIII.  That about July 1st, 1921, after said conversations with plaintiff and after an interview or interviews with one of the said Fullers then residing in Portland, the said Miles visited said land and premises, arriving about July 6th and remained thereon and living with the said defendant Ed. Fuller on said land from July 6th to July 13th, 1921, during which time he carried on such examination and investigation as he desired.

''IX.  That the assignment agreement between the Fullers and Miles dated July 13, 1921, was to be sent to Portland for execution by one of the Fullers and to be returned to the bank, the escrow holder of the bill of sale from Miles to Fullers, all of which transactions were closed and the escrow instruments delivered August 10th 1921; that Miles made no effort to avoid said transaction relative to the real estate, but did make some attempt to rescind the deal because of some alleged unfair dealing on the part of the Fullers relative to the sale of certain personal property.

''X.  The court finds that the alleged false representations on the part of plaintiff, except as found in finding No. 7 have not been established by that clear and convincing evidence as required by the law, and the court finds that no fraud has been shown to mislead said defendant, and that said defendant, Miles, prior to the contract of July 13th, fully examined said property and was thereby advised and informed of all the matters and things of which he complains.

''XI.  That said lands have no water right from Tunk Creek or elsewhere and are not sub-irrigated, but the defendant was on and over said lands during a

favorable season of the year in which to discover that said lands were not sub-irrigated and that there was no water right therefor for a surface irrigation and should have done so.

"XII. That the defendant Miles has been a farmer all his life, but was a total stranger in this part of the country and was unacquainted with irrigation.

"XIII. It was stipulated in open court during the trial, and the court so finds that the lands hereinbefore mentioned and described are semi-arid and will not produce crops to the best advantage without artificial irrigation."

The conclusions were for the respondent as being entitled to a decree declaring the contract forfeited, giving him possession of the premises and $1 damages.

An examination of the evidence shows that it clearly supports the findings. It not only shows that the appellant would not buy without a personal investigation and examination of the lands, which continued for a week at the very best season of the year, to determine if the lands were sub-irrigated and to find out if there was artificial irrigation and water rights, but it shows also, by appellant's own testimony, that the Mr. Fuller who was living on the place represented to him that there were water rights with the lands; and the evidence further shows that, between the date of the preparation of the papers between him and the Fullers and the time his deal with them was completed and the papers delivered, he found out from others that there was no artificial irrigation or water right connected with the place. Because of this information, over and above his personal examination of the premises, he ordered the papers between him and the Fullers held up until he could adjust his differences with the Fullers, and yet it is this very money or its equal, or the great bulk of it that was paid to the Fullers, which he now claims should be repaid to him by the respondent.

The trial court found that there was no fraud on the part of the respondent that misled the appellant and that he fully examined the premises. The respondent has not received a dollar of appellant's money. The appellant had abundant opportunity to withdraw from his deal with the Fullers at any time for almost a month after the assignment of the contract had been placed in escrow, and after he had been fully informed by his extended examination of the lands and by knowledge given him by disinterested persons in that community with reference to the property and the fact that there was no available water right connected with it. The parties to this appeal were dealing at arm's length. The respondent was told by the appellant that the deal would not be made without a personal examination of the lands by him, which was not at all objected to by the respondent. The examination made was not a hasty one but lasted for a week, during all of which time the appellant stayed on the place, wholly unattended by the respondent or anyone representing him. We think the conclusions and judgment of the trial court are correct.

Affirmed.

HOLCOMB, MAIN, FULLERTON, and MACKINTOSH, JJ., concur.