[No. 21499. Department Two. November 30, 1928.]

FREDERICK A. BEELER *et al., Appellants,* v. HANS PEDERSON *et al., Respondents.*[1]

*George B. Cole* and *John Wesley Dolby,* for appellants.

*Tucker, Hyland & Elvidge,* for respondents.

ASKREN, J.—In July, 1925, appellants were the owners of a farm in Snohomish county and two lots in the Rainier valley. The farm was encumbered with two mortgages, in the sum of $8,500 each, in favor of the Federal Land Bank, with interest past due thereon; a second mortgage of $7,500 due the Security

[1]Reported in 272 Pac. 78.

National Bank of Everett, Washington, with interest due August 15; and a chattel mortgage of $8,000, covering the cattle on the farm, represented by past due notes. At the same time respondents were the owners of 640 acres of timber land in Oregon.

An exchange of properties was agreed on, briefly stated as follows: Appellants were to receive the Oregon timber lands and respondents the farm, the Rainier valley lots and a mortgage on the timber lands, to be executed by appellants, in the sum of $7,100. Respondents were also to execute an option in favor of appellants, whereby they could, by giving notice prior to January 1, 1926, become again the owners of the farm, upon payment of all moneys paid out by respondents for taxes, operating expenses, assessments, interest or principal on mortgages, etc., and by delivering to respondents a mortgage of $7,100 on the farm. In the meantime appellants were to continue possession and use of the farm at an agreed rental of two hundred dollars per month. The necessary and proper instruments were placed in escrow. Shortly afterwards it developed that the representations made by appellants as to the amount of taxes and assessments upon both the farm and lots were incorrect, and respondents vainly sought to have appellants clear these matters up. Appellants paid no rent as required by the terms of the option. The option was extended and then the extension cancelled because of misrepresentations upon the part of appellants. In the meantime respondents endeavored to cancel the whole deal and asked to be placed in the same position they were before the deal was entered into. Subsequently appellants abandoned the farm and respondents took possession to protect their mortgage. Appellants made a tender under the option, which was refused as insufficient.

Appellants brought this action and stated three grounds for relief. The first cause was for damages based upon a claim that respondents had misrepresented the value of the Oregon timber land, the second was a claimed breach of warranty because of existing rights of way for ditches across the land, and the third for damages for breach of the option agreement.

Respondents cross-complained and asked for rescission of the contract.

Upon trial of the action, plaintiffs' first cause of action was dismissed after a demurrer to it was sustained, at the close of plaintiffs' case. The second cause of action was dismissed also upon a voluntary nonsuit. At the close of the defendants' case their cross-complaint for rescission was dismissed upon motion of plaintiffs. This left for the court's consideration the question of damages for breach of the option agreement, which resulted in a holding for the defendants. This appeal followed.

The assignments of error total fifty-nine in number, but we think they may justly be classified under three headings for consideration upon appeal.

The first one is the claim that error was committed in denying appellants a jury trial. This point merits little discussion. While the pleadings presented a demand for equitable relief, we think the short answer to the contention that a jury trial should have been allowed is found in the written stipulation as follows:

"June 21, 1927. It is hereby stipulated that the within cause may be tried by John S. Jurey as a special judge without a jury, the plaintiff expressly waiving all right to a trial by jury in the said cause.

Cole & Dolby,
Attys. for Plffs.
Tucker, Hyland & Elvidge,
Atty for Defts."

It is not denied by appellants that the jury was expressly and knowingly waived, but it seems to be contended that, inasmuch as a jury had theretofore been denied the appellants, any waiver thereafter was of no effect. In other words, that when appellants waived the right to a jury, they waived nothing. The argument is difficult to follow. It clearly appears that the case had been referred to a referee to hear and thereafter it was agreed that the referee should try the case as a special judge. Respondents, however, agreed to this only upon condition that the jury should be waived. The point is hardly reserved for appellants to urge here.

The second assignment revolves around the question of whether the trial court correctly held that appellant had failed to sustain its first cause of action based upon misrepresentations. Without detailing the evidence upon this point, the facts disclosed may be briefly summarized as follows:

At the time of the negotiations for the exchange of properties, respondents furnished a blueprint of the Oregon land, prepared in 1910. This blueprint showed in excess of 48,000,000 feet of timber. Appellants also claimed that respondents told them repeatedly that the land had that amount of timber upon it, and that they relied upon such statements. As a matter of fact, the land had been burned over and at the time of the exchange had between five and six million feet of timber.

If this were all the testimony upon this point, it is clear that a *prima facie* case was made out by appellants. But the additional evidence offered negatives a holding that appellants relied on any such statements by respondents. The record is conclusive that before the instruments were signed appellants wired the assessor of the county where the land was sit-

uated, asking for information as to the amount of timber thereon, and its assessed valuation. An answer received the day the instruments were signed showed the land and timber assessed at $3580. The assessor's wire was later copied into a letter and sent to appellants. Through error, a cruise covering other land was inclosed with the letter. Upon appellant notifying the assessor, a correct cruise was sent, showing the timber to be 5,500,000 feet. The information that the land was assessed at only $3580 was received by appellants before the instruments were ever placed in escrow, and the exact information as to the cruise and value was had before any consideration had actually passed.

Yet, with these facts before them, they chose, according to their testimony, to rely upon the claimed statements of respondents that the land was worth about $48,000, and contained 48,000,000 feet of timber, shown by a blue print cruise of seventeen years before. Appellant was engaged in selling real estate and business chances, and is shown to be a man well versed in his avocation. The record also established that, thereafter and while he still had ample opportunity to withdraw from the deal, if in fact he had been deceived, he had further credible information from others advising him that the land contained a very small amount of timber. We are satisfied that appellants did not rely upon the representations so claimed to have been made, or if they did, they had no right to do so in face of the clear, positive and unequivocal evidence showing the true state of facts regarding the timber land. *Zilke v. Woodley,* 36 Wash. 84, 78 Pac. 299; *Fitch v. Miles,* 133 Wash. 368, 233 Pac. 916.

The third phase of this appeal involves the right of appellants to recover for breach of the option agreement. The brief presents the question under

many headings, but the major points considered are: First, whether appellants were in default upon their own obligations at the time; second, was a sufficient tender made by appellants, and third, were any damages proved?

We are not disposed to review here the large mass of testimony in an attempt to establish the correctness of the trial court's rulings on the first two questions, since the determination of the last one, if in respondents' favor, is decisive of this branch of the case. The trial court patiently heard a great deal of testimony concerning the value of the farm and placed it at $25,000. A careful and painstaking review of the evidence in this connection leads us to the same view. Taking the value as found by the trial court and giving consideration to the encumbrances thereon, it is readily seen that no damages were suffered by appellants. Indeed the record shows all the way through that respondents would gladly have returned this farm to appellants, could they have done so without actual loss. It is equally clear that appellants did not desire to be repossessed of it, and this is not to be wondered at, when we see that to do so would be to their financial detriment.

Neither the equities nor the law are in appellants' favor, and we conclude that the judgment must be and it is affirmed.

FULLERTON, C. J., PARKER, and MAIN, JJ., concur.