[No. 6774.   Decided June 17, 1907.]

JULIUS SAHLIN et al., Respondents, v. T. G. GREGSON et al., Appellants.[1]

MORTGAGES—ABSOLUTE DEED AS MORTGAGE—EVIDENCE—SUFFICIEN- CY.   An absolute deed is not shown, by clear and satisfactory evidence, to be a mortgage, where only the grantor testified to that effect and he was contradicted by three witnesses, part of whom were disinterested, and where the grantor took the precaution to reserve a gravel bed embracing but a small proportion of the land, which would probably not have been excepted had the transaction been a loan.

SAME—INADEQUACY OF PRICE.   In an action to reform a deed of a one-half interest in land, claimed by plaintiff to be a mortgage to secure $100, inadequacy of such sum as a purchase price is not shown, where it appears that the whole property was subject to a mortgage for $1,500, which was at least two-thirds of its value; that previously, but subsequent to the mortgage, the grantor had conveyed a one-half interest in the property by warranty deed, which might throw the whole burden of the mortgage on the half interest in question; and where, after the giving of the deed in question, the other half interest was sold for $300, there having meantime been an increase in values.

[1]Reported in 90 Pac. 592.

Appeal from a judgment of the superior court for King county, Griffin, J., entered September 5, 1906, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to cancel a deed. Reversed.

*McCafferty & Bell,* for appellants.
*Blaine, Tucker & Hyland,* and *W. L. Read,* for respondents.

RUDKIN, J.—The plaintiffs in their complaint alleged that a certain warranty deed, executed by them to the defendant Jurich, was intended as a mortgage to secure a loan of $100; that the amount of the loan with legal interest was tendered, and that the defendants refused to accept the tender or reconvey the property. The prayer was that the deed in question, together with certain other deeds subsequently executed by the grantee, be annulled and cancelled. The court below gave judgment according to the prayer of the complaint, and from such judgment the present appeal is prosecuted.

If this judgment is permitted to stand, deeds and other written instruments have lost their chief virtue. The only testimony offered tending to show that the deed was intended as a mortgage, or was given as security, was that of one of the grantors, Julius Sahlin. As against this, there was the direct and positive testimony of three witnesses, some of whom, at least, have no apparent interest in the outcome of the action. But if the respondents' testimony stood alone and uncontradicted, it may well be doubted whether it was legally sufficient to sustain a judgment in an action of this kind where clear and satisfactory proof is indispensable. On the day the deed was executed, the respondent Julius Sahlin was on his way to Snohomish county on some timber deal out of which he expected to make a commission of $500. He was so far in need of funds to defray the expenses of his trip that he was willing to give the appellant Gregson $25 to procure a temporary loan of $100. He met Gregson fortuitously on

the streets of Seattle, and they at once repaired to a nearby saloon to get a drink. Without any solicitation on Sahlin's part, and without any apparent knowledge on the part of Gregson as to his financial stress, Gregson reminded Sahlin that some time before he had told him to come to him if in need of money; that he could get money for him on his property. Sahlin took advantage of this timely offer, and the deed now in controversy was the result.

It is not claimed that Gregson represented the purchaser, unless it be inferred from their prior relations, or from the fact that an undivided one-fourth interest in the property was transferred to Gregson's wife within a few hours after the execution of the Sahlin deed. The purchaser was not present at the time of the execution of the deed, but was represented by his attorney, who prepared the deed and paid the consideration. Sahlin admits that nothing was said about a loan in the presence of the purchaser's representative, but contends that it was stated in his presence that he should have an option to repurchase the property within thirty days. This the attorney refused to give, as it would convert the transaction into a mortgage. Sahlin contends that it was then orally agreed that such reconveyance should be made, but as stated above, all this is denied by three witnesses Sahlin admits that he read the deed, knew its contents, and knew the difference between a deed and a mortgage. Furthermore, at the time of the execution of the deed, he insisted that a gravel bed embracing from three to five acres should be reserved from the grant That such a reservation should be made in a deed given to secure a temporary loan for a small amount is somewhat singular. It doubtless seemed so to Sahlin, for he attempted to explain the reservation by stating that the gravel bed had been reserved in prior transactions, yet, he admitted, and the record shows, that it was included in the two mortgages on the property and in the deed of an undivided one-half interest theretofore executed to Carlson and Johnson. In fact, it was

included in all prior transactions, except an agency contract entered into with a real estate dealer.

The respondents urge that the consideration paid was grossly inadequate. The consideration is no doubt an important element in cases of this kind, but let us examine the facts. The property was subject to two mortgages aggregating the sum of $1,500. Whether there was any accrued interest does not clearly appear. It was also subject to two years taxes which, with interest, would approximate $50. The Sahlins had conveyed an undivided one-half interest in the property to Carlson and Johnson by deed of general warranty, except as to the two mortgages. It does not appear that the grantees assumed any portion of the mortgaged indebtedness; and under such circumstances it may well be doubted whether, as between the respondents and their grantees, the half interest retained would not have to be first subjected to the payment of the mortgage debt. If so, the respondents' equity in the property was valueless. But for the purposes of this case we will assume that it was the duty of all parties in interest to contribute *pro rata* towards the payment of the mortgage indebtedness. The total encumbrance in the entire property would therefore be $1,550 at the very least.

On the 3d day of March, 1906, twelve days before the execution of the deed in controversy, the respondents granted a certain real estate agent the exclusive right to sell the property for a period of thirty days for $2,300 net to them. This was for the entire property free from encumbrances, not the undivided interest held by the respondents. No purchaser was found until after the conveyance to the appellants, nor until after the announcement was made that the Chicago, Milwaukee and St. Paul Railroad intended to come down Cedar river in close proximity to the land. This announcement had a marked effect on the value of property in that vicinity, and was made after the conveyance to the appellants. It further appears that Carlson and Johnson sold their undivided one-

half- interest for $300 on March 24, 1906, and there was unquestionably an increase in the value of the property between the 15th and 24th of March. We are safe in saying therefore, that the value of the property did not in any event exceed the amount asked for it by the respondents, and that their undivided interest in the equity would not exceed in value three or four hundred dollars at the outside. But an interest of that kind is not salable. Few persons would purchase an undivided one-half interest in property, encumbered by mortgages for two-thirds of its entire value, unless they had or could make arrangement to purchase the remaining interests. If the respondents had such arrangements they did not avail themselves of it here. The purchaser might be compelled to lift the entire mortgage indebtedness and then resort to an action for contribution—an action he might fail in, in this case, for reasons already stated. If the purchaser should be compelled to engage in litigation to protect his rights, the costs and expenses would soon consume the small equity in the property. For these reasons it cannot be said that the consideration was so inadequate as to raise any presumption one way or the other. If the sale of such an interest for a consideration of $100 would seem unreasonable, the taking of such security for a loan of $100 would seem equally so. The inference that the respondents are attempting to avail themselves of the increase in value and a better offer, is just as strong as any inference that might arise from the inadequacy of price.

On the entire record we are constrained to hold that the respondents have utterly failed to show that the deed is other than it purports on its face to be, and the judgment is reversed with directions to dismiss the action.

HADLEY, C. J., FULLERTON, CROW, MOUNT, ROOT, and DUNBAR, JJ., concur.