[No. 7812.    Decided April 5, 1909.]

CARL GOLLE, *Respondent*, v. STATE BANK OF WILSON CREEK *et al.*, *Appellants.*[1]

CANCELLATION OF INSTRUMENTS—DEEDS—FRAUD—EVIDENCE—SUFFICIENCY. There is no such clear, unequivocal and convincing evidence as to warrant the setting aside of a quitclaim deed, on the ground that the grantor supposed it to be a guaranty of a debt, and signed it without reading because he did not have his glasses, and the grantor is guilty of negligence precluding relief, where it appears that he had lived in this country forty years, could read and speak English, was engaged in business, had average experience and had conveyed property, and did not read the deed or ask to have it explained; the cashier of the grantee testifying that the deed was given voluntarily as security for the debt.

DEEDS—CONSIDERATION—SEAL. A deed under seal imports a consideration.

Appeal from a judgment of the superior court for Douglas county, W. M. Clapp, Esq., judge *pro tempore*, entered July 6, 1908, upon findings in favor of the plaintiff, after a

[1]Reported in 100 Pac. 984.

trial on the merits before the court without a jury, in an action to cancel a deed. Reversed.

*W. E. Southard* and *C. J. Lambert*, for appellants.

*Sam B. Hill*, for respondent.

RUDKIN, C. J.—On the 8th day of July, 1903, the plaintiff in this action conveyed the property now in controversy to the State Bank of Wilson Creek by a quitclaim deed reciting a consideration of $500. On the 25th day of May, 1904, the State Bank of Wilson Creek, conveyed to the Citizens Bank of Wilson Creek by a like instrument. This action was instituted against the two banks to set aside the above mentioned deeds on the ground that the former was obtained through fraud and misrepresentation. From a judgment in favor of the plaintiff according to the prayer of his complaint, the present appeal is prosecuted.

It appears that, at the time the first-mentioned deed was executed, the respondent and one Kemp were engaged in the saloon business at Wilson Creek, as copartners, the business being conducted on the lots in controversy. Kemp was indebted to divers persons and corporations, including the State Bank of Wilson Creek, in considerable sums. To the latter institution he owed the sum of $550, evidenced by two promissory notes upon which certain small interest payments had been made. The respondent testified, in substance, that the cashier of the bank had importuned him on several occasions to secure the Kemp indebtedness to the bank by mortgage, but that he had refused to do so; that he finally agreed to guarantee the payment of a certain $200 note to the bank, and that he signed and executed the quitclaim deed in controversy, assuming and believing that it was some kind of a contract of guaranty.

The assistant cashier of the bank, on the other hand, testified that the quitclaim deed was executed to secure the payment of the two promissory notes above described; that the deed was executed freely and voluntarily, and that the re-

spondent read, or at least looked over, the deed before signing. We find little in the record to corroborate or contradict either of these witnesses.   The respondent is a German by birth, but has lived in this country for upwards of forty years.   He has a fair education in his own language, and can both read and speak the English language.   Property has been conveyed to him by deed or patent on at least three different occasions during his lifetime, and he had twice before conveyed property of his own.   He was engaged in the saloon business for three years in the state of Nebraska, and was engaged in the same business in this state at the time the deed was executed. He carried a bank account and had at least average experience in the common affairs of life.   He says he did not read the deed before signing it, nor did he ask to have it read to him.   The only excuse he offered for not reading the deed himself was the fact that he did not have his glasses with him, and he offered none for not having the deed read or explained to him.   We think this testimony was entirely insufficient to warrant the court in granting the relief prayed for.

As said by this court in *Sahlin v. Gregson*, 46 Wash. 452, 90 Pac. 592: "If this judgment is permitted to stand, deeds and other written instruments have lost their chief virtue." In actions of this kind the authorities all agree that the proof on the part of the party seeking to defeat the operation of his deed must be clear, unequivocal and convincing.   *Dabney v. Smith*, 38 Wash. 40, 80 Pac. 199; *Reynolds v. Reynolds*, 42 Wash. 107, 84 Pac. 579; *Johnson v. Conner*, 48 Wash. 431, 93 Pac. 914.   Furthermore, the failure of the respondent to read the deed or have the same read to him, under the circumstances disclosed by this record, shows such negligence on his part as to place him beyond legal or equitable relief. *Hubenthal v. Spokane & Inland R. Co.*, 43 Wash. 677, 86 Pac. 955.

It is further claimed that there was no consideration for the deed because it was given to secure a preexisting indebtedness, and there was no extension of time or other new con-

sideration, but the deed was under seal and the seal itself imports a consideration. *Considine v. Gallagher*, 31 Wash. 669, 72 Pac. 96; *Monro v. National Surety Co.*, 47 Wash. 488, 92 Pac. 280.

The judgment should therefore be reversed with directions to dismiss the action, and it is so ordered.

ALL CONCUR, except PARKER and MORRIS, JJ., who took no part.