[No. 19679.  Department Two.  April 13, 1926.]

G. W. O'NEIL, *Respondent,* v. WASHELLI CEMETERY ASSOCIATION *et al., Appellants,* A. D. SHIRREFF *et al., Defendants.*[1]

[1] PRINCIPAL AND AGENT (56)—EVIDENCE OF AGENCY—SUFFICIENCY. A salesman employed to sell crypts on a commission is not shown to have had authority to make representations for which his principal would be responsible, by the fact that he had an office with the principal's name upon the door, and used stationery and cards representing himself as its sales manager, where there was nothing to indicate delegated authority to make the representations.

[2] SAME (56). A principal is not bound by unauthorized representations of its sales agent where it prevented such excess of his authority as soon as it learned of the fact.

[3] SAME (56). A principal is not responsible for false representations of its sales agent, amounting to promises of something in the future not ordinarily a basis for such a claim, or matters of opinion, or representations that the purchasers' contracts were not binding and need never be performed.

[4] SAME (56). A principal is not responsible for false representations of its sales agent that he would resell the property at a profit, which agreement was purely personal to himself.

Appeal from a judgment of the superior court for King county, Casey, J., entered June 22, 1925, upon findings in favor of the plaintiff, in an action for rescission of contracts of sale, tried to the court. Reversed.

*Shank, Belt & Fairbrook,* for appellants.

*Hutchinson & Hutchinson, Arthur H. Hutchinson, W. Harold Hutchinson,* and *J. Grattan O'Bryan,* for respondent.

MACKINTOSH, J.—The Washelli Mausoleum and the Rose Hill Mausoleum are owned and operated by the appellants, and during a period of twelve months, seven

[1]Reported in 244 Pac. 990.

people purchased crypts therein, making a down payment on the purchase price; and now seek to have the contracts of purchase rescinded and their payments returned because of alleged fraud. The respondent is one of the purchasers, and to him were assigned the claims of the other six. The alleged fraud consisted of misrepresentations made by the defendant DeWey, who had been employed by the appellants as a salesman on a commission to sell the crypts. The seven different contracts were entered into at different times and under different conditions and were induced by different representations and promises. But, in the consideration of this case *de novo* on appeal, it is unnecessary to segregate the different transactions, for the reason that we find no fraud in any of them, and the case can be considered as though all of the statements, which are alleged to have been fraudulent, were made in each one of the separate transactions.

[1] The testimony shows that DeWey was employed and was to be paid twenty per cent of the sale price of the crypts out of the first payments, that he had full authority to sell to whom ever he pleased, and was delivered a number of contracts signed in blank, with spaces left for the filling in of the names of purchasers and the description of the crypts and their price; DeWey being given authority to fill in the blanks and deliver the instruments to the purchasers. The facts relied on to show the responsibility of the appellants for DeWey's statements are that DeWey maintained an office with the name of the Washelli Cemetery Association painted on the door. The evidence, however, is that the appellants had no connection with this office, that the office, as a matter of fact, consisted of desk room, and that even this was not used until after several of the contracts had been entered into;

and there was nothing fraudulent, in fact, even if the name of the appellant had been upon the office door.

It is then claimed that the stationery used by DeWey was the same as that used by appellants, with the addition of his name as sales manager. An examination of this stationery indicates that there is nothing thereon indicating any authority delegated to DeWey to make representation on behalf of the appellants. It is next said that DeWey was permitted to use cards of the appellants describing himself as sales manager. Examination of the card in the record shows that DeWey was not thereon represented as a sales manager for either of the appellants, but as a sales manager for Washelli Memorial Park, which is a concern not maintained or operated by either of the appellants; and the same may be said of the letterheads which refer to the Washelli Cemetery and Mausoleum.

[2] The next claim is that the officers of the appellants knew that DeWey was holding himself out as being authorized to make representations for them, from the fact that they visited DeWey at his office. The testimony shows that the officers, as soon as they ascertained that DeWey was exceeding his authority, prevented his continuing further in that way.

[3] It is next claimed that these were the acts establishing the responsibility of the appellants for the false pretenses which it is claimed DeWey made in procuring the seven different contracts. These alleged false pretenses were, first, that the price of the crypts would be shortly advanced. This was a promise of something in the future, which is not ordinarily a basis to sustain a claim of false representation. Moreover, the testimony does not establish that this promise was not made in good faith. The second alleged false pretense was that there was a scarcity of crypts and a

great demand for them. The fact that DeWey sold crypts to the amount of $45,000 in a very short time would seem to be a sufficient answer to the claim that there was no demand. As to the statement in regard to a scarcity, that was a matter of opinion, or rather, salesman's talk, and we cannot say that it was such a misrepresentation as would amount to actionable fraud. The third alleged false pretense was that the parties making the contracts would not need to make any payments, that the contracts were mere scraps of paper and that they would never be called on to carry out their contracts. It cannot be seriously contended that such statements as these are fraudulent misrepresentations, which would entitle parties entering into such contracts to rescind them on the ground that they had been defrauded.

[4] The fourth ground, and probably the representation which really induced all these parties to enter into the contracts, was that DeWey would re-sell these crypts before the second payments on the contracts became due. This contract of re-sale, as it appears in the record, is purely personal to DeWey. It certainly was not one which the appellants authorized DeWey, either directly or impliedly, to enter into on their behalf. It was the inducement which led the people into a speculation in crypts. They thought they were going to be able to make a profitable investment and that, before the time came for them to comply with their contract, they would have disposed of their purchase and pocketed their profit. If every agreement of this kind should be held to be fraudulent misrepresentation and entitle parties to rescission, the courts would be called on to protect everyone who, having entered into a contract with the expectation of profit, was later disappointed. The courts have not yet

arrived at the point where they will assume such a degree of guardianship. The testimony shows that, in several instances, with full knowledge that DeWey was not complying with his contract to re-sell, the parties continued to make the payments, that no protest was ever made to appellants that DeWey had secured the contracts by deception and fraud, that the offices of the appellants and their officers were well known, that inquiry could have instantly been made to determine whether DeWey had exceeded his authority in making these contracts. Altogether, the picture is one where parties unable to carry out their agreements had entered into those agreements with the expectation that they would not have to be carried out, but that they would be able to make a profit and pass the agreement on to someone else to comply with.

Upon the whole record, we can find nothing that rises to the height of clear and convincing proof of fraud. For that reason, the judgment of the lower court is reversed and the action dismissed.

TOLMAN, C. J., PARKER, MITCHELL, and MAIN, JJ., concur.