[No. 22656. Department Two. April 30, 1931.]

JOHN A. BLOMQUIST, *Respondent*, v. HENRY G. RUNKEL
*et al., Appellants.*[1]

*Hyland, Elvidge & Alvord* and *Tucker & Tucker,* for appellants.

*Lundin, Barto & Devin,* for respondent.

FULLERTON, J.—In the early part of May, 1927, the respondent, Blomquist, was the owner of a tract of land consisting of seven and one-half acres, lying immediately north of the north boundary line of the city of Seattle. The taxes on the property for three years last past had not been paid, and then amounted to the sum of $609.90. The property was also encumbered by a mortgage executed by the respondent, which was then overdue, and to foreclose which the holder of the mortgage had instituted an action against him. The amount then due upon the mortgage, together with

[1]Reported in 298 Pac. 458.

the accrued cost of the foreclosure proceedings, approximated something over six thousand dollars.

For some time preceding May 10, 1927, the respondent had been active in an endeavor to obtain a new loan on his property for the purpose of satisfying the obligations against it, but up to that time had been unsuccessful, owing, as he testified, to the fact that his property was unimproved. On the day last named, he visited the office of John Davis & Co., real estate and loan agents, doing business in the city of Seattle, and made to that company an unsuccessful effort to procure a loan. While he was in the office, and after the company had refused him a loan, the appellant Henry G. Runkel came into the office. Runkel was also a real estate agent, and the representative of John Davis & Co. introduced him to the respondent, saying to the respondent that Runkel might have something to exchange for his property.

Runkel then made inquiry as to the location of the respondent's property, and the incumbrances upon it, and informed the respondent of a tract of land the title to which stood in the name of one Jennie F. Reynolds, in which he and another had an interest, which might be exchanged for his property. The respondent expressed a willingness to investigate the proposition, and the appellant took him out to see the property. This property was situated in the southern part of the city of Seattle, at a place known as South Park, and consisted of four lots, on which stood a two-story brick building. It was several miles distant from the location of the respondent's property, in a locality in which the respondent testified he was unacquainted. It was incumbered by a mortgage in the sum of two thousand dollars, which was not then due.

After some negotiation, the parties agreed upon an even exchange, and deeds conveying the properties

were placed in escrow, to be delivered after the respective purchasers became satisfied with the title to the property conveyed to him. The deeds were deposited in escrow on May 12, 1927, and withdrawn and delivered on May 19, 1927.

Some six months after receiving a deed to the property he received in exchange, the respondent suffered the mortgage thereon to be foreclosed and sold under a decree of foreclosure, from which sale he did not redeem.

In November, 1928, the respondent, conceiving that he had been defrauded by the misrepresentation of Runkel, began an action against him and his wife and Jennie F. Reynolds, to recover in damages as for fraud and deceit. He laid his damages in the sum of ten thousand dollars. On a second trial of the action, the jury having disagreed at the first trial, a verdict was returned against Runkel and wife for the sum of four thousand five hundred dollars; no mention being made in the verdict of the other defendant. On this verdict, a judgment was entered against Runkel and wife, and it is from this judgment that the appeal before us is prosecuted.

In his complaint, the respondent alleged that, at the time of the exchange of the properties, he was a man ignorant of and unfamiliar with the value of city and business property, and was at that time under a disability, in that he was suffering great mental agitation and worry, which materially affected his judgment, all of which the appellants well knew, and that they took advantage of his condition and, by false and fraudulent representations, induced him to make the exchange hereinbefore set out. The false and fraudulent representations consisted, as he alleged, in misstatements as to the condition of the brick building then on the property, misstatements as to the value of the prop-

erty, and misstatements as to the rental value of the property.

The evidence, as we view it, contains no support for these charges. As to the respondent's mental condition, the most the respondent would himself say concerning it is that, "He was disturbed." As the appellant who conducted the negotiations met the respondent for the first time in the office of the real estate brokers where the negotiations began, and as he and no one else discovered that the respondent was then weakened mentally, it will hardly do to say that this statement was sufficient evidence on which to base a finding that the appellant found the respondent in a mentally weak condition, and took advantage of it for the purpose of cheating and defrauding him.

Nor do we think the representations alleged and testified to were such representations as the respondent had a right to rely upon. The most potent of these is the representation that the building on the premises was a sound, well-built structure. But if the representation was in fact made, the respondent knew of its untruth before he consented to the exchange. He visited the building twice before the deeds were exchanged, once in the company of Runkel and once alone. On each visit he was permitted to enter, and did enter, the building and make such an examination of it as he pleased. He knew at the time of his examinations that the building had been constructed in 1906, and was at that time more than twenty years old; he knew that one of the outside walls of the building was cracked for a considerable distance; knew that there was a large hole in the floor of one of the two storerooms into which the lower story of the building was divided, and he observed that the boards and joists surrounding the hole were decayed; and he knew also that the roof bore evidences of leaking.

Indeed, he says in his brief that he makes no reliance on any misrepresentation concerning these defects, but claims that there were other defects which could not be observed by mere inspection, and which it would take a "scientific investigation" to determine whether they existed or not. These defects, as we understand the respondent, consisted of the fact that certain of the joists on which the lower floor rested were dry rotting; that the trusses of the roof were fastened together with nails instead of bolts; and that the walls of the building were out of plumb.

But it seems to us manifest that, if these conditions existed at the time of the exchange, they were as readily ascertainable then as they were afterwards, and unless the court is compelled to act as the guardian of the respondent, they did not constitute actionable fraud or deceit. It must be remembered that the parties were strangers to each other, and were acting at arm's length. Neither was under any disability. There was no relation of trust or confidence between them. Each was driving his own bargain. The property was at hand. Any defect in the building could be ascertained by the exercise of ordinary care. Under these circumstances, the rule is, as we said in *Zilke v. Woodley,* 36 Wash. 84, 78 Pac. 299, and have reiterated in numerous other cases:

"Any representations made before the parties viewed the land were not pertinent, for the reason that, after viewing the land for themselves, they no longer had a right to rely upon such representations, and they thereafter proceeded in the light of their own knowledge from actual view of the premises and surroundings. This court has frequently held that one who has the means of knowledge before him, and who refuses or neglects to avail himself thereof, is prevented from asserting that he is defrauded."

The record bears abundant uncontradicted evidence that the representations made on the side of the appellants were not the inducing cause of the exchange. As we have noted, the respondent's property was heavily incumbered; the incumbrances were due, and proceedings were pending to subject the property to their satisfaction; and he had exhausted the sources from which relief could be obtained before he met the representative of the appellants. The natural inference from these matters is that the respondent felt that the property he held was lost to him, and welcomed a chance to obtain something for his interests, feeling that anything so received was gain. These circumstances, the evidence all but conclusively shows, were the inducing causes of the exchange, and not the representations made by the appellants.

We are aware that were these the controlling considerations, they would be for the jury and not the court. We mention them for the purpose of showing that the respondent did not suffer the somewhat grievous wrong the verdict of the jury would indicate.

The judgment is reversed and the cause remanded, with instructions to dismiss the action at the respondent's costs.

MITCHELL, BEALS, MILLARD, and BEELER, JJ., concur.