[No. 23131. Department Two. August 7, 1931.]

GEORGE W. JONES *et al.*, *Respondents*, v. STANDARD OIL COMPANY OF CALIFORNIA, *Appellant*.[1]

*Battle, Hulbert & Helsell,* for appellant.

*Marion Garland,* for respondents.

BEALS, J.—Plaintiffs, who for some time had been conducting a service station in the city of Bremerton, stated in their complaint two causes of action. In the first, they alleged that, between January 10 and October 1, 1929, they had sold 38,010 gallons of defendant's gasoline, upon which they were entitled to an allowance of two cents per gallon more than they had

[1]Reported in 2 P. (2d) 76.

84

already received. In the second cause of action, they alleged that they had rented to defendant a service station at a net rental of $41.67 per month, and that defendant owed them ten months rent. Defendant, in its amended answer, denied any indebtedness on plaintiffs' first cause of action, and as to their second, admitted owing rent for the month of October, but denied that it owed any other rental. By way of an affirmative defense and counterclaim, defendant alleged that plaintiffs were indebted to it for goods sold in the sum of $359.90.

Upon the trial, defendant abandoned its denial of the facts set forth in plaintiffs' second cause of action, and admitted its indebtedness to plaintiffs in the sum of $416.70 for ten months rent; plaintiffs, on their part, admitting their indebtedness for goods sold in the amount claimed by defendant, as above set forth. This left the only issue to be tried that set forth in plaintiffs' first cause of action, in which they claimed that defendant was indebted to them in an amount equal to two cents a gallon on the gasoline which plaintiffs had sold between the dates above set forth. This issue was tried to the jury, which returned a verdict in favor of plaintiffs for the sum of $686.64. From a judgment entered upon this verdict and upon the respective admissions of the parties hereto, defendant appeals, contending that the same is erroneous in so far as it includes the amount found by the jury to be due plaintiffs from defendant on the gasoline account.

It appears from the testimony that respondents, for some time prior to January 10, 1929, had been operating their service station, selling appellant's gasoline under an agency contract, by the terms of which they received four cents per gallon for all gasoline sold, appellant fixing the price at which the product should be retailed. On the date last above referred to, the

previous arrangement between the parties was modified by a proposition submitted by appellant to respondents, and accepted by them, the new agreement reading as follows:

"Seattle, Wash., January 10, 1929.
"Mr. G. W. Jones,
"Naval & Bursell Sts.,
"Charleston, Washington.
"Dear Sir:

"Referring to the agency agreement and lease agreement in effect between you and ourselves, dated November 8th, 1928, we hereby propose that the agency agreement, except paragraph 9 thereof, be suspended until further notice to you from us, and that during the period of such suspension you be licensed to use the premises for the sale of petroleum products upon the payment of said sum of $1.00 monthly as therein provided, we agreeing to supply you with such products for the purpose of your trade at the following prices:

"For Red Crown Gasoline four (4c) cents per gallon less than our posted Service Station or posted Plant price therefor, at time and place of delivery; and on the tenth day of each calendar month we will credit your account in a sum equivalent to two (2c) per gallon for all Red Crown Gasoline delivered to you on said premises during the preceding calendar month.

"For products other than gasoline the price will be as stated in said agency agreement.

"The agency agreement will be reinstated upon notice from us to you of the termination of the arrangement evidenced hereby. The lease agreement will remain in force during the period of this arrangement.

"Please express your approval by signing the confirmation on the enclosed copy of this letter.

"Yours truly,
"STANDARD OIL COMPANY OF CALIFORNIA
"By J. J. VALENTINE (Sd.)
"CONFIRMED: GEO. W. JONES (Sd.)"

At this time, respondents were indebted to appellant in a considerable sum, and were doing business with

appellant on a cash basis, all deliveries of gasoline thereafter made to respondents being paid for in cash at the time of delivery. After the making of the new contract, it seems to be conceded that respondents could sell the gasoline which they had purchased from appellant at any price they pleased, they testifying, however, that they did sell the gas at the price posted by appellant, or the price at which the gasoline was billed to them.

It appears from the testimony offered on behalf of appellant that it maintained regular schedules of prices, which were posted at each of its substation plants, the prices being fixed at its main office in San Francisco and forwarded to its agent in Seattle, who in turn distributed the schedules to the substations, where they were posted on bulletin boards. Appellant submitted the following statement of account concerning its dealings with respondents between the dates above referred to:

| Date | As Billed to Jones | Net Price to Jones | Posted Plant Price |
|------|--------|--------|--------|
| From Jan. 10/29 to Feb. 14/29..... | 17c | 15c | 21c |
| From Feb. 15/29 to Feb. 19/29..... | 15c | 13c | 19c |
| From Feb. 20/29 to March 18/29... | 13c | 10c | 17c |
| From March 19/29 to May 31/29... | 19c | 16c | 23c |
| From June 1/29 to June 18/29..... | 19c | 15c | 23c |
| From June 18/29 to June 19/29.... | 19c less 4 | 15c | 23c |
| From June 20/29 to June 30/29.... | 20c less 4 | 16c | 23c |
| From July 1/29 to Oct. 1/29....... | 21c less 4 | 17c | 24c |

Respondent George W. Jones (who will hereinafter be referred to as though he were the sole respondent) testified that, early in June, he, being of the opinion that he was not receiving from appellant proper credits, complained to appellant, and that he was forthwith allowed a further credit, to-wit, a total of six cents a gallon from May 7 to June 15. It appears that, as the result of respondent's visit to appellant's

office in Seattle, a letter was written to respondent by appellant's agent, and a change was made in the method of billing the gasoline, effective June 18, which change appears in the statement of account, as offered by appellant, hereinabove set forth. Respondent contends that the letter written him by appellant's agent did not correctly state the amended agreement of the parties, and it would seem that, to some extent at least, respondent's contention is correct, as this letter states:

"In order to allow you 4c off at the time of delivery, you understand you are to forego the cash rental consideration which we have heretofore been making, but in order that our records may be complete, it will be necessary that we draw our usual rental check which you have agreed to endorse upon presentation, back to the Standard Oil Company. It is the present understanding that the 4c differential is inclusive of the rental consideration; therefore the check which we shall draw the first of each succeeding month, in accordance with the terms of the lease agreement, will, as we have stated, be endorsed back to us,"

and appellant admits its indebtedness to respondent upon the rental account, contrary to the above quoted portion of the letter written by appellant's agent.

The trial court permitted respondent to testify as to conversations between himself and Mr. Macomber, appellant's representative at Bremerton, as to the meaning of the words "our posted service station or posted plant price," as contained in the agreement of January 10. Appellant contends that such testimony was inadmissible, and that the record contains no testimony which justifies the verdict of the jury in respondent's favor.

It is, of course, clear that respondent had nothing whatever to do with the fixing of the prices posted by appellant, and as above stated, it is admitted that re-

spondent could sell his gas at any price he pleased. Under the agreement effective between the parties prior to January 10, 1929, appellant fixed the price at which respondent should sell its product, and paid him four cents a gallon for selling it. This basis of operations was radically changed by the agreement of January 10. The motives of the respective parties in making the new contract are not clear. Respondent testified that appellant's agents represented to him that he would profit by the change.

In our opinion, the agreement of January 10 is subject to oral explanation, in so far as it refers to appellant's "posted service station or posted plant price." This clause apparently refers to two different schedules. The parol testimony offered by respondent in explanation of his theory concerning this contract was clearly admissible. It is evident that appellant did not guarantee to respondent any profit at all, as respondent could sell his gasoline at or below its cost to him, if he desired to do so. At the same time, the agreement apparently leaves the fixing of the price to respondent entirely to appellant, and it could, at its option, post such prices as would prevent respondent from being able to buy even at six cents a gallon less than the posted prices and still sell at a fair price or at the market price of gas in his vicinity. Appellant itself prepared the agreement of January 10, and, if the same be found ambiguous, must suffer the risk of having such ambiguity explained by oral testimony and the controversy submitted to a jury for determination.

From the record, it appears that appellant's position as to the agreement between the parties was not at all times consistent, and we conclude that the trial court did not err in allowing the introduction of parol

testimony to explain the portion of the contract above referred to.

Appellant contends that the testimony of the admission of which it complains, did not explain the contract, but completely destroyed the same, and that it might be contended that, under the contract, respondent was entitled to purchase gas from appellant at six cents a gallon less than a retail price fixed by respondent himself. No such question is here presented, as respondent testified that he, at all times, retailed his gasoline at the gross price at which it was billed to him by appellant. Had respondent cut his price, or had appellant unreasonably and arbitrarily raised its price, different questions would be presented. Respondent testified that, upon his complaint made to appellant in June, his contention was agreed to by appellant's agent, and that his claim was allowed in full as to gasoline delivered him from May 7 to June 15.

It clearly appears that June 18 some change was made in the contract between the parties which, coupled with respondent's testimony above referred to and the other evidence in the case, was competent evidence for the jury to consider in determining the question at issue. Appellant's theory is that the change effective June 18 simply made immediately available to respondent the entire differential in the cost to him of the gasoline which he was purchasing from appellant, but we are unable to hold from the record that this question should be determined in appellant's favor as matter of law.

Appellant's proposition of January 10, *supra*, in form at least, offered to respondent the option of accepting or rejecting the same, and it directly provides that the ''lease agreement'' should remain in force. Under the prior arrangement, respondent was receiving four cents a gallon for selling appellant's gasoline,

90

and it is not unreasonable to suppose that, in suggesting some new arrangement between the parties, appellant would offer to respondent a contract to some extent, at least, more advantageous to him. If respondent anticipated no advantage from the new contract, he would be unlikely to agree thereto.

The business transactions between the parties are not easy to understand, but upon the record before us, we hold that whether or not appellant was indebted to respondent in accordance with respondent's contention, was for the jury to determine.

The judgment appealed from is affirmed.

TOLMAN, C. J., BEELER, PARKER, and MITCHELL, JJ., concur.