[No. 25499. Department Two. April 23, 1935.]

W. W. SHEANE AUTO COMPANY, *Respondent*, v.
ASSOCIATED OIL COMPANY, *Appellant*.[1]

*Eggerman & Rosling,* for appellant.

*Frank J. Allen* and *Grady & Velikanje,* for respondent.

MILLARD, C. J.—Plaintiff brought this action to recover the difference between discounts claimed to have been received and the rental and differential which it is alleged plaintiff was entitled to receive on gasoline purchased from defendant. Plaintiff alleged that a modification agreement as to the price of gasoline was procured by false representations on the part of the oil company, and that plaintiff had not received from February 20, 1932, to March 22, 1933, the discount of eight cents a gallon to which it was entitled under the agreement as modified.

The cause was tried to the court, which found in effect that defendant, under its first and subsequent contracts, agreed to pay plaintiff as rental and differential eight cents a gallon on all gasoline purchased by plaintiff from defendant and sold to plaintiff's retail

[1]Reported in 44 P. (2d) 182.

trade. On the issue of fraud, the trial court found in favor of defendant. The findings recite that plaintiff received credit for rental and differential on 84,322 gallons of gasoline purchased from February 20, 1932, to March 22, 1933, in the amount of $3,789.07, and that plaintiff °was entitled to recover in the amount of $2,-941.40. Judgment was entered accordingly. Defendant appealed.

The facts are as follows: By written agreement executed February 20, 1929, the Sheane Auto Company leased its service station property at Yakima to the Associated Oil Company for a term of three years, with an option for an additional two years. The rental provision of the lease reads as follows:

"On the 15th day of each month Lessee agrees to pay Lessor as rental a sum equal to Three Cents (3) for each gallon of gasoline sold to Lessor by Lessee during the preceding month for resale from said premises, and for which Lessor has paid Lessee in accordance with license agreement between them of even date herewith, minimum rental of Ten Dollars ($10.00) a month to be paid in any event. Amount of rentals shall be credited on account of payments due (if any) by Lessor for products purchased from Lessee."

On the same date and as a part of the same transaction, the parties entered into a written license agreement under the terms of which the lessor, as licensee, was to remain in possession of the leased premises and to use the same solely for the purpose of retailing the products of the licensor oil company, the lessee. We quote as follows the provision governing the price—licensor's *posted market price*—which the licensee was to pay for gasoline:

"LICENSEE agrees to pay LICENSOR for all gasoline at LICENSOR's posted market price for gasoline, (including tax), to consumers generally at place of delivery on the date of delivery, (said posted price as of

the date hereof being 19 cents for ASSOCIATED GASO-
LINE, and 22 cents for ASSOCIATED ETHYL GASOLINE,
less LICENSOR's posted differential to resellers gener-
ally at place of delivery on date of delivery, (which
differential on date hereof is four cents (4c) per gal-
lon), it being agreed that said differential shall not be
less than four cents (4c) during the period of this
License.''

On May 20, 1929, the parties entered into the follow-
ing modification agreement, under which the lessor li-
censee was given an additional one cent upon rental
and the price of gasoline changed so that, instead of
receiving a guaranteed differential of four cents a gal-
lon from the licensor's *posted market price* for gaso-
line to consumers generally, the licensee was to pay
the *posted tank wagon price* as posted by the majority
of the five principal marketing companies:

"License Agreement between us covering property
at above premises as described in said agreement is
hereby modified so that commencing June 1, 1929, you
will pay us for all Gasoline thereunder the posted tank
wagon price (including tax) as posted by the majority
of the five principal marketing companies at their
principal place of business, covering Gasoline for sale
at place of delivery on date of delivery, on which basis
as of date hereof you would pay 21 cents per gallon
for ASSOCIATED GASOLINE and 24 cents per gallon for
ASSOCIATED ETHYL GASOLINE.

"If said companies change their price structure, that
is, their method or basis of establishing their posted
tank wagon price, we reserve the right at any time to
invoice the Associated Oil Company's posted tank
wagon price.

"In lieu of the rental specified in lease between us
covering the same property, we will pay you as rental,
commencing June 1, 1929, four cents (4c) for each
gallon of Gasoline sold by us to you for resale from
said premises.

"Please acknowledge your acceptance on attached
copy.''

There is no evidence of fraud or mistake in the making of the modification agreement. Respondent contends that, at the time the modification agreement was submitted to it by appellant, the former was informed that, under the new agreement, respondent would receive one more cent profit, while appellant insists that the only representation made was that respondent would receive an additional cent as rental. Whether the statement made was that the additional one cent would be profit or rent, is of no moment. There is no showing of misrepresentation, and it clearly appears that respondent knew what it was doing.

No good purpose would be served by reciting at length the evidence in this case. The evidence clearly establishes the fact that respondent knew that all it would receive when the contract was modified was rental of four cents a gallon, instead of three cents a gallon, and that respondent received an additional one cent for rent. The modification agreement providing for a different rental rescinded the earlier agreement. It is not denied that respondent always received a discount of four cents off the posted tank wagon price after the modification agreement became effective. The posted tank wagon price was a real price standard, a price fixed by the contract, and there being no fraud, oppression or mistake, that price must govern. The new price is complete within itself. It provides that, commencing June 1, 1929, respondent will pay the posted tank wagon price, and to further clarify the agreement, the following appears:

"... on which basis as of date hereof you would pay 21 cents per gallon for ASSOCIATED GASOLINE and 24 cents per gallon for ASSOCIATED ETHYL GASOLINE."

That is, the posted tank wagon price today is twenty-one cents, from which respondent is entitled to a deduction of four cents a gallon for lease and license. Prior

to the modification agreement of May, 1929, the price of gasoline was controlled by the license agreement under which respondent agreed to pay the posted market price less a four-cent differential less three cents for rental. At that time, the posted retail market price was twenty-five cents. From this was subtracted the differential of four cents and the rental of three cents, making the cost of gasoline to respondent eighteen cents a gallon. Following the execution of the modification agreement, the price standard was the posted tank wagon price less four cents rental.

Respondent's treasurer and manager testified as follows:

"I have all of the May, 1929, tickets here. I suppose they were all billed in the same manner. On this ticket of May 1, 1929, Associated posted retail market to consumers generally as of today is 25c and the price we were charged was 4c less, or 21c, and we received a credit on account of rental of 3c a gallon. So the price we were billed at was the posted retail market price less 4c and less 3c, so that the net price during the month of May was 18c or 7c off of 25. . . .

"I have the June tickets here. On June 4, 1929, we were charged 21 less 4c. This ticket was after the modification. Our price standard then was the posted tank wagon price as posted by the majority of the five principal companies."

One of respondent's employees testified as follows:

"During the month of May we were getting four and three off of the posted retail selling price, or 18c, and we were retailing during May at 22c, so that our margin of profit was 4c. In June we were paying Associated for gas 17c and were selling for 22c, so that we were getting a margin of 5c, which is 1c greater than we got in the preceding month."

That respondent was not expecting under the modification agreement to purchase gasoline at eight cents below the posted tank wagon price, but only at four

cents below the posted tank wagon price, is conclusively shown by the foregoing testimony. Respondent claims no more than that it was promised an additional one cent profit; that profit or rental, respondent received. Prior to the modification of the contract, respondent was paying eighteen cents for gasoline for which subsequent thereto it paid seventeen cents. The seventeen-cent billing was made because the four cents rental was deducted from the posted tank wagon price. If respondent's theory is correct, it should have been billed at thirteen cents, or eight cents below the posted tank wagon price.

The four cents differential was eliminated, as counsel for appellant contend, by the modification agreement. The modification agreement eliminated the old paragraph as to price in its entirety and substituted a new paragraph on price. That paragraph was complete within itself, and does not contemplate an additional deduction of four cents differential. That the parties so understood the contract, clearly appears from a careful examination of the record.

The judgment is reversed, and the cause remanded with direction to dismiss the action.

MITCHELL, STEINERT, and BLAKE, JJ., concur.