[No. 25872. *En Banc.* December 21, 1936.]

ARTHUR G. JOHNSON *et al.*, *Appellants*, v. SHELL OIL COMPANY OF CALIFORNIA *et al.*, *Respondents*.[1]

*Vanderveer & Bassett* and *Clarence J. Coleman*, for appellants.
*Hyland, Elvidge & Alvord*, for respondents.

ON REHEARING.

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court adheres to the opinion heretofore filed herein, and reported in 185 Wash. 393, 55 P. (2d) 609.

MILLARD, C. J. (dissenting)—The majority opinion is opposed to a settled line of decisions in this state on a number of points. Certainty, clarity and consistency demand that this court either definitely overrule those cases or indicate wherein they are distinguishable from the case at bar. This action is based on fraud in inducing the execution of a contract by misrepresentation. The majority opinion is to the effect that the misrepresentation is fraudulent and actionable because the contract is, as a matter of law, ambiguous, in spite of the fact that we have several times held that the same contract is, as a matter of law, unambiguous. The previous decisions are wrong and should be overruled if the present decision is correct.

Appellant Johnson testified that he was told that the sublease was not a new contract, and that he would get his rent at the time of delivery, instead of at the end of each month. He also testified, "I was too busy to read it, and I just signed it." It is a basic rule, which the majority disregards, that the court will not act as a guardian or as a parent in a case such as is the one at bar. The reason advanced by the majority for its disregard of that rule is that the contract is ambiguous. We quote as follows:

"While it is elementary that one who signs a contract which he had every opportunity to read cannot be heard to say that he did not read the same *(Washington Central Imp. Co. v. Newlands*, 11 Wash. 212, 39 Pac. 366; *Tacoma v. Tacoma Light & Water Co.*, 16 Wash. 288, 47 Pac. 738; *Zilke v. Woodley*, 36 Wash. 84, 78 Pac. 299), this rule is not controlling here, as the contract was ambiguous and required explanation; and, in addition, appellant testified that his signature to the contract was secured by misrepresentation." *Johnson v. Shell Oil Co.*, 185 Wash. 393 (401), 55 P. (2d) 609.

[1]Reported in 63 P. (2d) 483.

The language of the sublease reads as follows:

"As a further consideration for this covenant and agreement, the sublessor promises and agrees at all times while this agreement shall be and remain in full force and effect to sell and deliver to the sublessee for resale from the demised premises gasoline at a price to sublessee not greater than the tank wagon price for commercial gasoline effective date of sale at Everett, Wash., said tank wagon price being no cents per gallon more than the sublessor's tank wagon price for commercial gasoline as determined and posted at sublessor's depot at Everett, Wash., including Washington State Motor Vehicle Fuel Tax. . . ."

Except for names of places, the sublease in *Robinson v. Shell Oil Co.*, 172 Wash. 611, 21 P. (2d) 246, was identical in language. The language of the sublease in that case reads as follows:

"As a further consideration for this covenant and agreement, the sublessor promises and agrees at all times while this agreement shall be and remain in full force and effect to sell and deliver to the sublessee for resale from the demised premises gasoline at a price to sublessee not greater than the tank wagon price for commercial gasoline effective date of sale at Sunnyside, Wash., said tank wagon price being no cents per gallon more (than) the sublessor's tank wagon price for commercial gasoline as determined and posted at sublessor's depot at Grandview, Wash., including Washington State Motor Vehicle Fuel Tax . . . ."

In that case we said, "The contract was not ambiguous. The price fixed by the contract is plain, definite."

In *Searl v. Shell Oil Co.*, 172 Wash. 621, 21 P. (2d) 249, the language of the sublease was as follows:

"As a further consideration for this covenant and agreement the sublessor promises and agrees at all times while this agreement shall be and remain in full force and effect to sell and deliver to the sublessee for resale from the demised premises gasoline at a price to sublessee not greater than the tank wagon price for commercial gasoline effective date of sale at Castle Rock, Wash., said tank wagon price being no cents per gallon less [than] the sublessor's tank wagon price for commercial gasoline as determined and posted at sublessor's depot at Kelso, Wash., including Wash. State Motor Vehicle Tax."

We there said, "The writings evidencing the contract between the parties are plain, definite and unambiguous as to price."

In *Shell Oil Co. v. Henry*, 175 Wash. 298, 27 P. (2d) 582, the language of the sublease was as follows:

"As a further consideration for this covenant and agreement, the sublessor promises and agrees at all times while this agreement shall be and remain in full force and effect to sell and deliver to the sublessee for resale from the demised premises gasoline at a price to sublessee not greater than the tank wagon price for commercial gasoline effective date of sale at Toppenish, said tank wagon price being no cents per gallon more than the sublessor's tank wagon price for commercial gasoline as determined and posted at sublessor's depot at Toppenish, including State Motor Vehicle Fuel Tax."

In *Shell Oil Co. v. Henry*, 175 Wash. 298, 27 P. (2d) 582, in quoting from the *Robinson* case, we again said: " 'The contract was not ambiguous. The price fixed by the contract is plain, definite.' " To the same effect are *Shell Oil Co. v. Wright*, 167 Wash. 197, 9 P. (2d) 106; *Jewell v. Shell Oil Co.*, 172 Wash. 603, 21 P. (2d) 243; and *Sheane Auto Co. v. Associated Oil Co.*, 181 Wash. 559, 44 P. (2d) 182. The language of the contracts in those cases and the language in the contract in the case at bar are the same; yet in the case at bar, the majority opinion recites,

"The phrase 'tank wagon price' is a technical phrase requiring explanation." " . . . the contract was ambiguous and required explanation." "This contract is in itself ambiguous."

Reference is made by the majority to *Jones v. Standard Oil Co.*, 164 Wash. 83, 2 P. (2d) 76, in support of the proposition that the language of the sublease in the case at bar is ambiguous. *Jones v. Standard Oil Co., supra*, is entirely different and was specifically distinguished in *Searl v. Shell Oil Co.*, 172 Wash. 621, 21 P. (2d) 249. In *Jones v. Standard Oil Co., supra*, the language was "our posted service station or posted plant price." The opinion in that case was written by the author of the majority opinion in the case at bar. It was there said:

"In our opinion, the agreement of January 10 is subject to oral explanation, in so far as it refers to appellant's 'posted service station or posted plant price.' This clause apparently refers to two different schedules. The parol testimony offered by respondent in explanation of his theory concerning this contract was clearly admissible."

We held that oral testimony was admissible on the theory of ambiguity because the clause in question referred to two different schedules, which is not true in the case at bar. The contract in *Jones v. Standard Oil Co., supra*, and the contract in the case at bar are not alike.

In *Searl v. Shell Oil Co.*, 172 Wash. 621, 21 P. (2d) 249, it was sought to introduce parol testimony to explain the contract. In that case, we held that oral testimony was not admissible because the contract was not ambiguous, and upon that ground distinguished *Jones v. Standard Oil Co., supra*. I agree with counsel for respondents that, if the *Jones* case was unlike the *Searl* case, certainly the *Jones* case is unlike the case at bar, because the contract in the *Searl* case was exactly like the contract in the case at bar, and that, "If a square peg will not fit in one circle it will not fit in any circle." I also agree with counsel for respondents that this court must travel the road of ambiguity as now pointed out by the majority opinion and post a "Road Ends" sign after the *Wright, Henry, Searl, Robinson* and *Jones* cases, or eventually retrace our steps and leave this decision for future explanation. The cases can not be reconciled with the case at bar.

The majority opinion says, " . . . in addition, appellant testified that his signature to the contract was secured by misrepresentation." I can not understand how inducement can have anything to do with construction. I do not understand what misrepresentation has to do with ambiguity. The following illustration of counsel for respondents is apt: A promissory note providing for payment of five hundred dollars in thirty days, plain and understandable in its terms, cannot be changed into an ambiguous instrument because the party procuring the signature to it represented that it was a deed to real property, or an assignment of a cause of action. While the misrepresentation may be a ground for setting aside the instrument in equity, it does not make ambiguous that which is plain and unambiguous. By the majority opinion, we have declared the law to be that a contract secured through misrepresentation may be deemed ambiguous, whereas the same contract procured without fraud may be deemed unambiguous. In the other cases cited above, there was no fraud procuring the signature to the sublease. In those cases, we declared the language of the sublease was plain and unambiguous. In the case at bar, the signature of appellant was procured allegedly by fraud. Therefore, the language of the sublease is judicially declared to be ambiguous. A novel field of law now lies before us.

I can not concur in judicial legislation to the effect that, notwithstanding the aggrieved party's discovery of facts constituting the fraud, nevertheless the statute of limitations will not commence to run until the guilty party takes a definite stand in the matter.

The majority opinion recites:

"While appellant, of course, knew that he was not receiving from respondent as much as he contended he should receive, the evidence indicates that he did not understand the theory upon which respondent was paying him. The record supports his contention that he was, for a long period of time, led by respondent to believe that the matter was open to negotiation, and that respondent's position in the matter was not definitely determined. . . .

"If, immediately upon question of its account by appellant, respondent had made it clear that the amount paid was all that was due appellant, and that the respondent did not recognize any ground for appellant's contention that he was receiving less than was actually due him, an entirely different question would be presented. But, on the contrary, it appears that respondent did not take any such definite stand until many months after appellant had questioned its accounts."

Such rule is incorrect and is opposed to *Jones v. Gregory*, 125 Wash. 46, 215 Pac. 63; *Temirecoeff v. American Express Co.*, 172 Wash. 409, 20 P. (2d) 23; and *McCoy v. Stevens*, 182 Wash. 55, 44 P. (2d) 797.

The majority opinion is incorrectly based upon *Gustafson v. Cullen*, 155 Wash. 107, 283 Pac. 1087. In that case, it was held that the failure of a person to pay money was not sufficient to lead the

creditor to believe that the money had been misappropriated by the person to his own use. The fraud in that case was misappropriation of funds to one's own use. It was a secret, hidden thing. The alleged fraud in the case at bar was an affirmative act followed up immediately by conduct indicating it. It was disclosed by the contract itself and substantiated by the invoices and method of payment. In the case at bar, the facts were discovered within thirty days. In *Gustafson v. Cullen, supra,* no facts were discovered until just before the action was brought. That case does not sustain the majority opinion. The explanation of the case on which the majority relies is found in the paragraph following the paragraph quoted from the majority opinion. That paragraph reads as follows:

"There was no public record, indicating the true condition, of which he was bound to take notice, and nothing is shown by the complaint which would put him upon notice."

The cases are not parallel.

The receipt and possession of the contract, the daily receipt of invoices, each showing the changed arrangement, the immediate knowledge that appellant was not getting his full claimed and alleged allowance, do not square with the following language of this court:

"The statute of limitations begins to run, not only upon discovery of fraud, but also from the time when the fraud should have been discovered; and a clue to the facts, which, if diligently pursued, would lead to a discovery, is in law equivalent to discovery itself. Notice sufficient to excite attention and put a person on guard or to call for an inquiry is notice of everything to which such inquiry might have led." *Tjosevig v. Butler,* 180 Wash. 151, 38 P. (2d) 1022.

"The defrauded party cannot be heard to say that he has not discovered the facts showing the fraud within the limit of the statute if the facts should have been discovered prior to that time by anyone exercising a reasonable amount of diligence." *Davis v. Rogers,* 128 Wash. 231, 222 Pac. 499.

"When the opportunity for discovering the fraud is presented it must be made use of promptly." *Ferry v. Ferry,* 9 Wash. 239, 37 Pac. 431.

"A party defrauded must be diligent in making inquiry. The means of knowledge are equivalent to knowledge. A clew to the fact which, if followed up diligently, would lead to discovery, is in law equivalent to a discovery." *Johnston v. Spokane & Inland Empire R. Co.,* 104 Wash. 562, 177 Pac. 810.

"Our statute, in effect, says that the cause of action is deemed to have accrued when the fraud is discovered. What is discovery? We answer, notice of the fraud. What is notice? This we can best answer in the language adopted by the supreme court of the United States:

" ' "Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it" . . . "The presumption is that if the party affected by any

fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it." ' " *Deering v. Holcomb,* 26 Wash. 588, 67 Pac. 240, 561.

The appellant admitted he discovered at the end of the first month that he had been defrauded. He said on cross-examination:

"Mr. Starr did not exactly take advantage of me,—he fixed it so I didn't get the two cents. I found it out just as soon as I didn't get my credit memorandum at the end of the month."

That he knew at once that he was being defrauded (if any fraud was perpetrated) is recognized by the opinion in this case, but it is asserted by way of excusing him that he did not know how he was being defrauded. The majority opinion says:

"While appellant, of course, knew that he was not receiving from respondent as much as he contended he should receive, the evidence indicates that he did not understand the theory upon which respondent was paying him."

The rule now is the statute of limitations for fraud commences to run, not when we learn we have been defrauded, but when we find out how we were defrauded.

There was no attempt on the part of appellants at the time of trial to bring themselves within the statute of limitations. That the action was not commenced within three years subsequent to the perpetration of the alleged fraud, is obvious and conceded. That being so, it was necessary for the appellants to affirmatively plead and prove that they did not know of the fraud until less than three years prior to the commencement of the action. There was no attempt to do either of these things in the lower court. Instead of making a *prima facie* case, as this opinion states, there was an utter failure of proof fatal to the action. We said in *Reeves v. Davis & Co.,* 164 Wash. 287, 2 P. (2d) 732:

"There being no evidence that Mr. Reeves did not know of the fraud, if there were fraud, until less than three years prior to the time the action was begun, there was a failure of proof in this regard, which was an essential element for the respondents to allege and prove. . . .

"There being a complete failure of proof of one of the essential elements of the case, the action cannot be sustained."

The majority opinion says: "In the case at bar, the parties were not strangers, dealing at arm's length." Why were they not dealing at arm's length? They were in no different position than that usual between men dealing daily in commercial enterprises. One was a wholesaler and the other a distributor; one was doing business in a big way and the other in a comparatively small way. Each was necessary to, and yet independent of, the other. There was no unusual or extraordinary phase in their dealing. It is a usual and common relationship. I agree with counsel for respondents that:

" . . . there was no element about it that took down the bars of arms length dealing—no element of fiduciary relationship. Is not an automobile manufacturer dealing with his reseller in the ordinary way, doing so at arm's length. Are they in a fiduciary relationship? Is not the grocer or butcher dealing with the house wife at arm's length? Are not the contractors and subcontractors on a construction project dealing at arm's length? A myriad of situations may be presented. What rule is laid down by this case to determine hereafter when business men are dealing at arm's length? What rule is followed in this case to bring the oil company and the dealer into a fiduciary relationship? If these parties were not dealing at arm's length, if there was a fiduciary relationship between them, then any business transaction between men today may be successfully challenged upon this ground.

"Indeed, such a theory as this is not even suggested or hinted at by the briefs or argument of counsel for appellants, and certainly was not raised at the time of trial. There is no basis for the conception in the facts of this case or in the law applicable thereto.

"A relation of trust and confidence does not arise except out of some special situation wherein one party to the contract occupies such a position to the other that he is under obligation to make a full and complete disclosure to another for the benefit of the other and for the other's protection. Such as (1) domestic relation; i. e. husband and wife. (2) Legal relations; i. e. guardian and ward. (3) Business relation, i. e. attorney and client.

"No situation like this is disclosed by the case at bar. If it is then it would apply to every contract entered into in every phase of business activity."

The appellant testified that, "I was too busy to read it and I just signed it."

In the following cases recovery has been denied under such circumstances: *Sherman v. Sweeney*, 29 Wash. 321, 69 Pac. 1117; *Hubenthal v. Spokane & Inland R. Co.*, 43 Wash. 677, 86 Pac. 955; *Golle v. State Bank of Wilson Creek*, 52 Wash. 437, 100 Pac. 984; *Washington Central Imp. Co. v. Newlands*, 11 Wash. 212, 39 Pac. 366; *Tacoma v. Tacoma Light & Water Co.*, 16 Wash. 288, 47 Pac. 738; *Zilke v. Woodley*, 36 Wash. 84, 78 Pac. 299; *Conta v. Corgiat*, 74 Wash. 28, 132 Pac. 746; *Walsh v. Bushell*, 26 Wash. 576, 67 Pac. 216; *Griffith v. Strand*, 19 Wash. 686, 54 Pac. 613; *Sahlin v. Gregson*, 46 Wash. 452, 90 Pac. 592; *Dabney v. Smith*, 38 Wash. 40, 80 Pac. 199; *Reynolds v. Reynolds*, 42 Wash. 107, 84 Pac. 579; *Johnson v. Conner*, 48 Wash. 431, 93 Pac. 914; *Wescott v. Wood*, 122 Wash. 596, 212 Pac. 144; *Hegberg v. Tripp*, 99 Wash. 298, 169 Pac. 822; *Walquist v. Johnson*, 103 Wash. 30, 173 Pac. 735; *Wilson v. Mills*, 91 Wash. 71, 157 Pac. 467; *Meyer v. Maxey*, 92 Wash. 73, 158 Pac. 995; *Forrester v. Jastad*, 97 Wash. 633, 167 Pac. 55; *Fitch v. Miles*, 133 Wash. 368, 233 Pac. 916; *Sims v. Robison*, 142 Wash. 555, 253 Pac. 788; *O'Neill v. Washelli Cemetery Ass'n*, 138 Wash. 566; 244 Pac. 990; *Lanz v. Hocum*, 158 Wash. 58, 290 Pac. 706; *Blomquist v. Runkel*, 162 Wash. 362, 298 Pac. 458; *Fidelity & Casualty Co. v. Nichols*, 124 Wash. 403, 214 Pac. 820; *Johnston v. Spokane & Inland Empire R. Co.*, 104 Wash. 562, 177 Pac. 810.

The majority opinion fails to cite any precedent anywhere for permitting a recovery under such circumstances.

In *Kelley v. von Herberg*, 184 Wash. 165, 50 P. (2d) 23, we reiterated the fundamental rules which the majority opinion now repudiates. We said, quoting from *Hubenthal v. Spokane & Inland R. Co.*, 43 Wash. 677, 86 Pac. 955:

" ' . . . Does the allegation,

" ' "That at the time said agreement for the right of way was entered into between plaintiffs and defendant corporation, the said defendant corporation proposed to plaintiffs that they would reduce the said agreement to writing and would prepare the necessary instrument for the purpose of carrying out said contract, and thereafter said defendant corporation did present to plaintiffs a certain agreement in writing, which said defendant corporation said embraced the agreement so made for the said right of way, and requested plaintiffs to sign the same, and plaintiffs, believing that the said instrument so presented contained the agreements for said right of way as above alleged, thereupon executed such agreement and the said defendant corporation took possession of the said instrument, and at all times since has retained the same. That plaintiffs have no knowledge as to the exact contents of said agreement so signed, but signed and executed the same on the understanding and representations that it contained the agreements of the parties as above alleged;" entitle the appellants to equitable relief on the ground of fraud or mistake, simply because the agreement does not embody all the prior stipulations of the parties? *We are of the opinion that it does not.*' " (Italics mine.)

and quoted as follows from *Washington Central Imp. Co. v. Newlands*, 11 Wash. 212, 39 Pac. 366:

" ' "It seems to us that parties must exercise ordinary business sense, and the faculties which are given to them for the purpose of transacting business; and that they cannot call upon the law to stand *in loco parentis* to them in the ordinary transactions of business, and their ordinary dealings with their fellowmen. . . . If people having eyes refuse to open them and look, and having understanding refuse to exercise it, they must not complain, when they accept and act upon the representations of other people, if their venture does not prove successful. *Written contracts would become too unstable if courts were to annul them on representations of this kind.*" ' " (Italics mine.)

And:

" ' "If no device is used to put him off his guard, a party who, having capacity to read an instrument, signs it without reading, places himself beyond legal relief." ' "

And:

" ' "In fact no excuse whatever is given, except that he signed the contract relying on the representation of plaintiffs as to its contents. This is inexcusable neglect, and the defendant must suffer the consequences of his own folly." ' "

In *Hayes v. Automobile Ins. Exchange*, 126 Wash. 487, 218 Pac. 252, we said:

"Whether he read it or not is immaterial. It was his duty to read it, and the law says that he did read it."

In *Perry v. Continental Ins. Co.*, 178 Wash. 24, 33 P. (2d) 661, we said, "She cannot escape the duty of reading the application."

The majority opinion announces this court's departure from settled law and has thrown into confusion rules which I thought were established respecting construction of contracts, admission of parol evidence, fraudulent representation, fiduciary relationship and the statute of limitations.

The judgment should be affirmed.

BLAKE, MAIN, and STEINERT, JJ. (dissenting)—We adhere to the views expressed in the dissenting opinion in this case which appears in 185 Wash. at page 405.