[No. 22061. Department Two. January 10, 1930.]
ALFRED JACOBSON, *Appellant*, v. BERT NICHOLAS *et al.*, *Respondents.*[1]

*A. W. Dolphin* and *Fred J. Cunningham*, for appellant.

*D. R. Glasgow* and *Cannon, McKevitt & Fraser*, for respondents.

MAIN, J.—This action was brought to recover money alleged to have been illegally exacted of the plaintiff under compulsion. To the second amended complaint, which will be referred to as the complaint, a demurrer was interposed and sustained. The plaintiff did not

[1]Reported in 283 Pac. 684.

plead further, and a judgment was entered dismissing the action, from which he appeals.

The facts, as they appear in the complaint, which are essential to be stated are these: The H. L. Olsson Company was a corporation organized under the laws of this state, with its principal place of business in Spokane county. The corporation was capitalized for $15,000, which was represented by 15,000 shares of the par value of one dollar per share. Twelve thousand, two hundred shares of the capital stock were owned by the respondents and 2,800 by the appellant. The respondent Bert Nicholas was the president and manager of the corporation, and conducted its affairs. February 15, 1929, the appellant and the respondents entered into this contract:

"KNOW ALL MEN BY THESE PRESENTS:

"That Bert Nicholas and Iris Nicholas, husband and wife, being the owners of 12,200 shares of the capital stock of H. L. Olsson Company, Inc., hereby give and grant unto Alfred Jacobson the right, privilege and option to purchase said stock above described upon the payment of thirty thousand five hundred dollars ($30,500) on or before fifteen days from the date of this agreement. A further condition of this option is that the said Alfred Jacobson shall pay in cash all just and equitable claims against said corporation after an audit of the company's books immediately upon the signing of this agreement, said payments to be made at the office of the Spokane Savings and Loan Society, in the city of Spokane, Washington.

"In the event said Alfred Jacobson fails to exercise said option within the fifteen days aforesaid, then the said Alfred Jacobson grants the right, privilege and option to Bert Nicholas and Iris Nicholas, his wife, to purchase 2,800 shares of the capital stock of the H. L. Olsson Company, Incorporated, in consideration of the sum of seven thousand dollars ($7,000) to be paid on or before 26th day of February, 1929, said payment

236

to be made at the office of the Spokane Savings & Loan Society, in the city of Spokane, Washington.

"The undersigned agree upon the execution of this option to place the certificates of stock representing the total capital stock of the H. L. Olsson Company, Inc. in escrow with the Spokane Savings and Loan Society, in the city of Spokane, Washington, to be held by said escrow holder and delivered to the said Alfred Jacobson or Bert Nicholas and Iris Nicholas, his wife, upon the full payment of the consideration hereinabove set out.

"IT IS EXPRESSLY UNDERSTOOD that, in the event both of the parties hereto fail to exercise the option herein by making the payment specified, then this option shall be immediately terminated and at an end and each party shall be entitled to the delivery the respective stock placed in escrow.

"IN WITNESS WHEREOF, the undersigned have hereto set their hands and seals this 13th day of February, 1929.

Bert Nicholas        [Seal]
"Iris Nicholas        [Seal]
"Alfred Jacobson     [Seal]"

It will be observed that, in the first paragraph of the contract, the appellant is given an option for the period of fifteen days to purchase the stock of the respondents for $30,500, and if he does so purchase, he shall pay all "just and equitable" claims against the corporation after an audit of the books. The second paragraph of the contract gives to the respondents the right to purchase the stock of the appellant in the event that he does not take up the option given to him in the first paragraph. The third paragraph provides that, upon the execution thereof, the certificates of stock owned by the appellant and the respondents shall be placed in escrow.

After this contract was signed, the stock was placed in escrow as therein provided, and the appellant employed a competent accountant to audit the books of the corporation. This audit disclosed three items

which the respondents contended were just and equitable claims against the corporation and which the appellant disputed. One of the items was, and it is the one involved here, for the sum of $9,892.51, which it is alleged the respondent Bert Nicholas was fraudulently claiming as back salary. The other two items were $1,000 and $500, respectively. After the audit, the appellant tendered to the escrow holder the $30,500 and demanded possession of the stock, which was refused because the amount of the just and equitable claims against the corporation was in dispute. The appellant thereupon paid the $30,500, and the three items mentioned and the stock was delivered to him. The present action is to recover back the sum of $9,892.51, which was paid under protest, and which, as stated, was being claimed by Bert Nicholas as back salary.

The question is whether this sum was illegally exacted under duress or compulsion. It may be admitted that, where money illegally exacted is paid to prevent the sacrifice of capital investments, the payment is not voluntary, but made under what is sometimes called business compulsion, and, if paid under protest, may be recovered back. *Lonergan v. Buford,* 148 U. S. 581; *Olympia Brewing Co. v. State,* 102 Wash. 494, 173 Pac. 430; *Sunset Copper Co. v. Black,* 115 Wash. 132, 196 Pac. 640; *Duke v. Force,* 120 Wash. 599, 208 Pac. 67, 23 A. L. R. 1354. It cannot be said in the present case that the payment was compulsory, within the rule stated, for the purpose of protecting the option of the appellant, because he had made no investment in the option.

The question arises whether it can be said that the appellant made the payment in dispute under business compulsion for the purpose of protecting his investment in the stock of the corporation. Had the

appellant failed to take up his option, and the respondents elected to take their option, then the appellant would have received the value of his stock as specified in the contract, which, presumably, was all that it was worth. Had neither of the parties elected to purchase under the respective options, then the situation would have stood as though no option agreement had ever been made. In this event, if the president and manager of the corporation, as is alleged, was fraudulently diverting the corporation's funds, the law furnishes an adequate remedy to the minority stockholder, and the appellant was not required to elect to take up the option and pay the amount which he claims was illegally exacted for the purpose of protecting his investment.

It is alleged that the ordinary legal process by the minority stockholder would have had a bad effect upon the business of the corporation, but this is not sufficient in this case to justify a holding that the appellant was required to illegally pay under compulsion.

Neither can the appellant recover upon the ground that the amount of money in dispute was a fraudulent demand on the part of the president and manager of the corporation, because before paying the money and while the contract was purely executory he knew of such fraud, if there were fraud. 12 R. C. L. 413; *McDonough v. Williams*, 77 Ark. 261, 92 S. W. 783; *Elwood v. Tiemair*, 91 Kan. 842, 139 Pac. 362; *McCabe v. Kelleher*, 90 Ore. 45, 175 Pac. 608. Other cases might be cited, but the rule stated is well settled, and there is no necessity of here assembling more of the cases.

The judgment will be affirmed.

MITCHELL, C. J., BEALS, and HOLCOMB, JJ., concur.

FULLERTON, J., dissents.