[No. 23377.   *En Banc.*   March 11, 1932.]

SHELL OIL COMPANY OF CALIFORNIA, *Respondent*, v.
ELMER WRIGHT et al., *Appellants.*[1]

*Bartlett Rummel* and *Joseph A. Mallery*, for appellants.

*Rickabaugh & McElroy* and *Hyland, Elvidge & Alvord*, for respondent.

HOLCOMB, J.—On May 24, 1928, respondent leased the service station of appellants in Tacoma, Washington, for five years. The lease provided:

"The rental for said premises shall be adjusted to a sum equivalent to two cents for each and every gallon of Shell gasoline purchased during the month for each and every month during the term of this lease. The lease will be credited each and every month with said rental on a merchandise statement issued for the

[1]Reported in 9 P. (2d) 106.

following month's business; that is, rental for the month of August will be credited on September's statement.''

At the same time, respondents subleased the same premises to appellants for the purpose of using the same as a service station for handling exclusively Shell gasoline, motor oils, etc., and by the terms of the sublease appellants agreed to buy and respondents agreed to sell gasoline to appellants, which stipulation in the sublease reads:

''As a further consideration for this covenant and agreement the sublessor promises and agrees at all times while this agreement shall be and remain in full force and effect to sell and deliver to the sublessee for resale from the demised premises gasoline at a price to said sublessee not greater than the tank wagon price for commercial gasoline effective date of sale at Tacoma, Washington, said tank wagon price being no cents per gallon less than the sublessor's tank wagon price for commercial gasoline as determined and posted at sublessor's depot at Tacoma, Wash., including Wash. State Motor Vehicle Fuel Tax.''

Supplementary to the lease and sublease, by an offer made by letter on March 22, 1929, which was accepted and acted upon by appellants, respondent agreed to allow appellants an additional one cent per gallon for the term of the lease and sublease. The additional one cent per gallon allowed appellants came about by reason of respondent having extended credit to appellants in the sum of one thousand dollars for the purchase of gasoline from respondent, and appellants obligated themselves to repay that amount by the payment of one cent per gallon of gasoline purchased by them from respondent. Appellants paid the extra one cent per gallon on such gasoline, which

was applied as payment on the terms of the contract so long as the lease and sublease remained in effect.

In accordance with the provisions of the lease and sublease, which so permitted, appellants gave notice of cancellation thereof to respondent in May, 1930, which was acquiesced in by respondent, and it was stipulated at the trial that the contracts were cancelled as of May 26, 1930.

Although the contracts provided that the rent should be paid by credit memorandum issued at the end of each month for the purchases during that month, about March 1, 1929, appellants requested respondent to give them the credit for the rent at the time of each delivery. Thereupon, by mutual agreement, from March 1, 1929, for the balance of the period during which the contracts were in force, the rent at the rate of two cents per gallon was deducted at the time of each delivery from the tank wagon, to appellants. For instance, as shown by exhibits introduced by respondent, the posted tank wagon prices issued from time to time showed the allowances therefrom and the invoices delivered to appellants showed the deductions granted them.

For example, in the month of April, 1929, the tank wagon price posted at the office of respondent was 18½c. The invoices delivered to appellants billed the gasoline to them at 18½c gross, less two cents for rent and the one cent additional allowance, or a net of 15½c per gallon. At a certain period in May, the posted tank wagon price issued by respondent showed 18½c, less the three cents deductions, or a net of 15½c. For a certain time in June, the posted tank wagon price and the billing to appellants, showed 19½c as the price per gallon, which, with the three cents deductions, left 16½c per gallon net. In July,

1929, the tank wagon price, as posted in Tacoma, was 20½c. Appellants were billed at 20½c gross, less four cents allowance or a net of 16½c, which allowances included the two cents for rent, one cent additional allowance as required by the letter of March 22, 1929, and an additional one cent to assist appellants in meeting competition.

The same system was used continuously, as shown by these exhibits, the posted tank wagon price at Tacoma being shown as it changed from time to time throughout the period from February 28, 1929, to May 26, 1930, when the contract was terminated as heretofore stated.

The complaint of respondent against appellants is to recover a balance of $351.19. Appellants admitted that, on the original amount of credit extended, there still remained $351.19 balance for merchandise received, but affirmatively alleged that they had at no time refused to buy from respondent as much gasoline and oil products as the market would absorb, and that respondent, in violation of its contract, refused to fill the orders of appellants, and still did, at the time of pleading, refuse to deliver the orders to appellants, notwithstanding appellants had tendered cash payments for delivery of respondent's products in accordance with the terms of the contract. They further allege that they were ready and willing to purchase from respondent all the products of respondent which the public would buy at their place of business, and that their standing order for the products of respondent, it had failed to fill and still refuses to deliver. They allege a counterclaim against respondents for $1,070.80, being two cents per gallon on the admitted purchase by appellant of 53,540 gallons of gasoline from respondent during the existence of the contracts.

The trial court, after receiving all the evidence, some of which on behalf of respondent was undisputed, found that appellants had become indebted to respondent in the sum of $351.19, over and above all legal set-offs and counterclaims, on account of merchandise purchased of respondent at the special instance and request of appellants. The leasing, subleasing and subsequent modification of the contracts were found by the court to have been entered into, and the cancellation of the contracts on May 26, 1930.

The court also found that, after the contracts had been partially executed, and on March 1, 1929, the modification was made to the contracts to the effect that, instead of a credit memorandum being delivered to appellants at the end of each month, a sum equivalent to two cents for each and every gallon of Shell gasoline should be deducted at the time of the delivery of the gasoline, due appellants as rental.

It is further found by the court that respondent furnished invoices to appellants with the delivery of each load of gasoline during the period of the contract until its termination on May 26, 1930, in all of which statements the deduction of two cents for the rental on the premises was shown on each and every invoice, or that the invoices showed that the two cents was an adjustment on the lease contract between the parties. The court further found that appellants at all times accepted the deduction of two cents for rental as shown by the invoices.

In accordance with its findings, the court made conclusions of law and judgment in favor of respondent, and denied relief to appellants.

We may grant, as asserted by appellants, that the burden of proving payment of the rent was upon respondent. We consider that burden met by proving

the contract with its subsequent modification, stipulating the manner of payment of the rent, and that respondent had performed it.

There can be no question that an unexecuted contract, even though in writing, may be modified by agreement of both parties, and that, when so modified and acted upon by the parties, it will be given the same effect as if the modification was part of the original contract. *Tingley v. Fairhaven Land Co.,* 9 Wash. 34, 36 Pac. 1098; *La Plante v. Hubbard,* 125 Wash. 621, 217 Pac. 20; *Hunters Cattle Co. v. Carstens Packing Co.,* 129 Wash. 377, 225 Pac. 68; *Inman v. Roche Fruit Co.,* 162 Wash. 235, 298 Pac. 342.

The contracts having been modified so that the rental of two cents per gallon was deducted at the time of each delivery, unless appellants desired to contest that the two cents deduction on each gallon at the time of delivery was for rental or an adjustment of the lease, it was evidence of such payment; and if not, their duty was to object or protest. *White v. Little Co.,* 118 Wash. 582, 204 Pac. 186; *McManus v. Sawyer,* 231 Fed. 231; *Shell Oil Co. v. Cy Miller, Inc.,* 53 Fed. (2d) 74 (a case which fits this very closely and is very convincing).

The case here turns upon the question of whether or not the two cents deducted from each and every gallon of gasoline sold and delivered to appellants was, in fact, rental, or whether it was a mere deduction, such as was allowed and granted by respondent to all others similarly situated selling its products.

Appellants offered some evidence to the effect that respondent made the same deduction to some other dealers in Tacoma who dealt in respondent's products.

As the trial court aptly observed, in effect, these parties knowingly entered into these contracts, and,

although they may be more favorable to respondent than to appellants, the mere fact that respondent saw fit to give the same deductions to those who did not have contracts as they did to those who did have contracts, is not at all conclusive that these deductions were allowed as rental in one case and not in the other.

Appellants had the advantage of the contract to compel the allowance of discounts, as set forth therein, should respondent have attempted to charge them more. The other dealers, who had no such contracts, could not enforce such discounts, but could only receive them at the will and pleasure of respondent. They could be, and were, denied the discounts at any time respondent saw fit to deny them.

Appellants also complain because the determination of the posted tank wagon price was left to respondent. This was a matter of contract into which they deliberately entered. The price of all real and personal property may be fixed by contract. Rem. 1927 Sup., § 5836-9.

When the price is fixed by contract, it is fundamental that that price must govern in the absence of fraud, oppression, or mistake.

The tank wagon price at Tacoma was clearly proven, and it was not an arbitrary or fictitious price, as claimed by appellants. The prices were sent from the main office of respondent to their managers fixing the prices throughout Washington, Oregon and other Pacific Coast territory, as shown by the exhibits. Under the contracts, the tank wagon price at Tacoma, Washington, was the basic price for appellants to govern their purchases and sales and the deductions granted them by contract.

In a case arising in West Virginia, the Standard Oil Company had agreed to sell to certain dealers at

three cents less than its tank wagon price at Huntington, West Virginia. In construing this contract, the fourth Federal circuit court of appeals held that the price, in effect, was that actually charged at the tank wagon, and not that fixed and promulgated from the company's New York office without reference to prices actually charged at Huntington. *Standard Oil of New Jersey v. Wright Oil Service Co.*, 26 Fed. (2d) 895.

In a case cited by appellants, *Ford v. Norton*, 32 N. M. 518, 260 Pac. 411, 55 A. L. R. 261, which also involved a lease and contract providing for the exclusive sale of gasoline and oils by the lessor to the lessee during a fixed term, it was stipulated that the lessors should sell to the lessee at the leased station, gasoline, etc., at "current market prices." The question was how the current market prices were to be determined. The court there held that "current market prices" meant that the contract price should run or flow with the market, following its fluctuations. That does not fit this case, where the contract stipulates that the price of the gasoline shall be the tank wagon price as posted by respondent at Tacoma, Washington.

Appellants assert that it is axiomatic that they were entitled to receive gasoline at a price two cents less than they would have received same had they not had a lease, for otherwise there is no consideration for the lease and no payment of any rental by respondent.

This is a *non sequitur*, for, as has been heretofore indicated, they voluntarily made the contract, and they could enforce delivery of respondent's products at the tank wagon price and enforce deduction of two cents from each and every gallon as rental. This was done until the contract was terminated. The course of dealing between the parties throughout that time indicated that it was entirely satisfactory to appellants. There

is no claim of any fraud on the part of appellants, and there is no showing that there was any mistake or anything approaching business compulsion or duress.

We conclude that the findings made by the trial court could not have been otherwise; and as they sustain the conclusions and judgment, the judgment must be, and is, affirmed.

MAIN, MITCHELL, HERMAN, MILLARD, and BEELER, JJ., concur.

BEALS, J. (dissenting)—The contract between the parties to this action provides, *inter alia*, for the payment of rent by respondent to appellants. In my opinion, the "tank wagon price" referred to in the contract means that price at which respondent actually sold to its general customers gasoline from its delivery trucks, not a fictitious price from which it gave to every purchaser a discount or rebate. Respondent, by a complicated system of discounts and rebates which it gave to its different customers, practically nullified the provision of the agreement whereby it covenanted to pay rent to appellants.

It is apparent that respondent, during a considerable portion of the period with which we are here concerned, raised its "tank wagon price" to a figure from which it could and did give many or all of its customers a discount of two cents per gallon. This forced appellants, who had leased their garage to respondent, to pay to respondent the same price for gasoline that was paid by their competitors with whom respondent had no such contract.

While it is true that the agreement between the parties apparently leaves respondent free to fix its own tank wagon price, it seems to me clear that respondent, in so doing, should be held to the exercise of ordi-

nary business good faith, and that in its dealings with appellants it violated this principle. I accordingly dissent from the conclusion reached by the majority.

TOLMAN, C. J., and PARKER, J., concur with BEALS, J.