[No. 24231.  Department Two.  April 19, 1933.]

C. B. Searl *et al., Appellants,* v. Shell Oil Company, *Respondent.*[1]

*W. H. Sibbald (Jean E. Sibbald,* of counsel), for appellants.

*Hyland, Elvidge & Alvord* and *Charles H. Paul,* for respondent.

Steinert, J.—The complaint herein seeks recovery upon two causes of action: (1) for an amount representing rebates or loss of profits alleged to have been earned on the purchase of certain quantities of gaso-

[1]Reported in 21 P. (2d) 249.

line; and (2) for rentals alleged to be due and owing under a lease of a gasoline station. By its cross-complaint, defendant seeks recovery of a small balance owing for gasoline sold and delivered. Issues having been joined between the parties, the action was tried before the court, sitting without a jury, and resulted in findings and conclusions favorable to defendant, upon which judgment was entered dismissing the complaint and awarding defendant recovery upon its cross-complaint. Plaintiffs have appealed.

A summary of the facts is as follows: On March 5, 1929, appellants leased to respondent certain land, together with their service station equipment thereon, for a period of five years. The lease contained the following provision with reference to rental:

"RENTAL: The rental for said premises shall be a sum equivalent to three (3) cents per gallon for each gallon of Shell Gasoline purchased by the Lessor from the Lessee herein, during the term of this agreement; the Lessor to be credited on each month's merchandise statement for the previous month's purchases."

Coincident with the execution of the lease, respondent, in turn, sublet, by written sublease, the same premises back to appellants for the same period of time. Under the terms of the sublease, appellants were to maintain and conduct an automobile supply or service station on the premises and to handle exclusively respondent's petroleum products, including gasoline. The sublease contained the following provision with reference to the sale and delivery of gasoline by respondent to appellants:

"As a further consideration for this covenant and agreement, the sublessor promises and agrees at all times while this agreement shall be and remain in full force and effect to sell and deliver to the sublessee for resale from the demised premises gasoline at a price to sublessee not greater than the tank wagon price for

commercial gasoline effective date of sale at Castle Rock, Wash., said tank wagon price being no cents per gallon less [than] the sublessor's tank wagon price for commercial gasoline as determined and posted at sublessor's depot at Kelso, Wash., including Wash. State Motor Vehicle Tax.''

Taking the lease and the sublease together as forming the contract between the parties, it will be seen that appellants were to receive as rental for their premises an amount represented by three cents per gallon of gasoline purchased by them, and were to pay to the respondent for the gasoline so purchased the tank wagon price posted by the latter at its depot in Kelso, Washington. Abbreviating the contract still further, according to its effect, appellants were to receive the gasoline at three cents per gallon less than the tank wagon price posted at Kelso.

Pursuant to the agreement thus entered into, deliveries of gasoline were made to appellants from March 9, 1929, until shortly before this action was commenced. As each delivery was made by the respondent's truck driver, appellants were given an invoice which showed on its face that it was on the basis of the posted tank wagon price. Receipt of delivery was acknowledged by the appellants by signing the invoice. It is admitted that respondent regularly posted its tank wagon price at its depot in Kelso, in accordance with the ''refined oil price sheets'' sent out from headquarters.

Although the lease provided that the payment of rental to appellants by the respondent was to be made by monthly credits on the preceding month's merchandise statement, this was in fact never done. Whether the rental was paid in some other manner, or at all, is the principal fact in dispute. For the period of time up to and including March 9, 1929, appellants were

given a credit memorandum in the sum of $30.30, representing three cents per gallon on 1,010 gallons. After that date, respondent claims that it made the deduction for rent on each invoice as the gasoline was delivered. These invoices, with the memoranda thereon and the interpretation placed upon them by the parties, furnish the crux of the dispute in this case. The invoices were on the company's printed forms. With one or two exceptions, evidently occasioned by mistake or oversight, they all had stamped upon their faces the words "posted tank wagon price." Opposite the stamp-mark was written in the number of gallons delivered, and following that, on the same line, the price per gallon with the total amount extended.

At this point, the difficulty begins. It seems that, from March 9, 1929, to about November 1 of the same year, the truck driver, in making up the respective invoices on deliveries of gasoline, would first insert the price per gallon with the extended total, and then immediately draw a line through those figures and place beneath them a reduced price and amount. Sometimes, even, he would reduce the figures several times by the same process, leaving a final computation without the line drawn through it. The total deduction, however, always equalled, or was in excess of, three cents per gallon. As a regular rule after November 1, 1929, and at times, even, before that date, the original entry of price and amount on the invoices was left unchanged, but beneath it appeared the deduction of certain credits indicated variously by the words "less," "less discount allowance," "less contract" and "less verbal agreement." These credits, wherever single, were in the sum of four cents per gallon; where double or treble, they totaled six cents per gallon.

It is admitted by both parties that, from time to time, the respondent voluntarily allowed certain deductions from the posted tank wagon price to meet competition. The appellants contend that the entire deductions on the invoices were of that nature. Respondent contends that the deductions to the extent of three cents per gallon were in payment of rent, and that only the excess above three cents per gallon was accorded to meet competitive prices. Upon each delivery of gasoline, accompanied by an invoice, made out as above explained, appellants would pay to the truck driver, in cash, the net amount shown on the invoice.

A short time before the commencement of this action, appellants, claiming that they had not received their rent, made demand upon respondent for the accumulated rental based on a total purchase of approximately eighty thousand gallons of gasoline, or an amount of twenty-four hundred dollars. Appellants also demanded the sum of three hundred and ninety dollars for expenditures made by them for heat, water and electric current used by them in operating the station, which, under the original lease to respondent, it agreed to pay. Respondent refused to pay the rent demanded, on the ground that it had already been paid under the method just outlined. It also refused to pay the heat, water and electricity bills, for the reason that, in the sublease, these were obligations reassumed by the appellants. This suit then followed.

Upon the first cause of action, which is the claim for rebates, or loss of profits, little need be said. In concluding their brief with a reference to the rental feature, counsel for appellants use these words:

''For the purpose of getting a final decision in this count, we offer to waive the claim of lost profits and

to take a judgment for the 3c a gallon rental, reserving the right to claim lost profits should the case be tried again.''

Since, under our conclusion, the cause will not be tried again, the matter of loss of profits appears to be out of the case.

Aside from that, however, we think that the appellants are not entitled to a recovery upon this item. Appellants' assignments of error upon this phase of the case go to the exclusion of testimony touching representations claimed to have been made by respondent to appellants that the gasoline would be sold and delivered to appellants at such a price as would enable them to make a profit of four cents per gallon. The writings evidencing the contract between the parties are plain, definite and unambiguous as to price. The testimony offered would have had the effect of modifying the terms of a written contract by parol evidence. It is fundamental that this can not be done. *Fairbanks Steam Shovel Co. v. Holt & Jeffery,* 79 Wash. 361, 140 Pac. 394, L. R. A. 1915B, 477; *Kanasket Lbr. & Shingle Co. v. Cascade Timber Co.,* 80 Wash. 561, 142 Pac. 15; *Tacoma Mill Co. v. Northern Pac. R. Co.,* 89 Wash. 187, 154 Pac. 173; *Thompson & Stacy Co. v. Evans, Coleman & Evans,* 100 Wash. 277, 170 Pac. 578; *American Paper Co. v. Hastings,* 123 Wash. 595, 212 Pac. 1071; *Asbury v. Yakima Milling Co.,* 137 Wash. 203, 242 Pac. 362.

Appellants rely upon *Jones v. Standard Oil Co.,* 164 Wash. 83, 2 P. (2d) 76, and *Craig v. Richfield Oil Co.,* 167 Wash. 664, 10 P. (2d) 216. In those cases, the evidence was admitted to explain an ambiguity of terms, arising either through the interchange of similar terms or through representations made by one party to the other concerning their meaning. Here there was no such ambiguity, nor were there any repre-

sentations made by respondents concerning the meaning of the terms used. The parties deliberately entered into a contract upon the basis of a stated price, which was shown to have been regularly posted as called for in the contract. Moreover, contrary to appellants' claim of error, the record discloses that they were permitted on rebuttal to introduce evidence upon this very subject; and, upon the issue of fact thus presented, the court found against them upon what we consider to be a clear preponderance of the evidence.

Upon the second cause of action, involving the claim for rent, the case is in many, if not all, respects similar to a series of other cases recently decided in this court. *Shell Oil Co. v. Wright,* 167 Wash. 197, 9 P. (2d) 106; *Johnson v. Associated Oil Co.,* 170 Wash. 634, 17 P. (2d) 44; *Jewell v. Shell Oil Co., ante* p. 603; *Robinson v. Shell Oil Co., ante* p. 611. The contentions made in those cases were, with some variations and particularly with one exception to be hereafter noticed, the same as those made here. For instance, appellants argue that, since the same deductions were made for other operators of gasoline stations who did not have leases, therefore the deductions on appellants' invoices could not have been for rent. Answering that same argument in the *Wright* case, *supra,* the court said, on pp. 202 and 203:

"Appellants offered some evidence to the effect that respondent made the same deduction to some other dealers in Tacoma who dealt in respondent's products.

"As the trial court aptly observed, in effect, these parties knowingly entered into these contracts, and, although they may be more favorable to respondent than to appellants, the mere fact that respondent saw fit to give the same deductions to those who did not have contracts as they did to those who did have contracts, is not at all conclusive that these deductions were allowed as rental in one case and not in the other.

"Appellants had the advantage of the contract to compel the allowance of discounts, as set forth therein, should respondent have attempted to charge them more. The other dealers, who had no such contracts, could not enforce such discounts, but could only receive them at the will and pleasure of respondent. They could be, and were, denied the discounts at any time respondent saw fit to deny them.

"Appellants also complain because the determination of the posted tank wagon price was left to respondent. This was a matter of contract into which they deliberately entered. The price of all real and personal property may be fixed by contract. Rem. 1927 Sup., § 5836-9.

"When the price is fixed by contract, it is fundamental that that price must govern in the absence of fraud, oppression, or mistake."

Again, the appellants spent much of their time at the trial in stressing the fact that the prices in the invoices were changed in the manner already described. Their brief further adverts to it. Their argument is that the change was made merely for the purpose of correcting an error in the statement of the true posted tank wagon price, and not for the purpose of showing credits. In the *Jewell* case, *supra,* wherein a similar contention was made, this court said:

"Attention is called in the brief of appellant to the fact that on a few of the invoices a pencil line was drawn through the top line under the price. But this is immaterial because in all of those invoices the respondent received his gasoline at four cents less than the tank wagon price, as posted, and the price through which the pencil line was drawn was that posted price."

Likewise, here, the appellants in all the invoices received their gasoline at three cents less than the tank wagon price, and the price through which the line was initially drawn was that posted tank wagon price. Nor was the change sporadic, evidencing mistake only on

occasion, but was regularly made, as we shall hereinafter show.

As suggested above, there is probably one difference, in point of fact, between this case and some of the others above mentioned, and upon this difference the appellants base their claim for a different result. In some of those cases, there was evidence of an express agreement, or from which the court was warranted in deducing that there was an implied agreement, that the original contract between the parties had been modified to permit the proportionate deduction for rent to be made upon the invoices at the time of the deliveries. While, in this case, the evidence hardly goes to the extent of establishing an agreement between the parties that the deductions were to be for rent, nevertheless, as the trial court observed, there was no showing what the deductions to the extent of three cents were for, unless they were for rent. The practice adopted by the truck driver of first entering upon the invoices the posted tank wagon price, then immediately drawing a line underneath it and writing the reduced price per gallon, together with the total amount, was followed over a considerable period of time. It evidenced a settled procedure, and did not indicate an effort to correct a mere mistake made on a particular occasion.

Appellants' attention was challenged immediately thereby, as the evidence shows. They made inquiry at the time concerning it, and were told that it was pursuant to the instructions of the office. There can be no doubt, in our opinion, that, so far as the respondent was concerned, it was for the purpose of crediting the rental on the face of the invoice. The appellants accepted this method of accounting over a period of many months, during which, according to their contention, they were entitled to receive credit

memoranda at the end of the month for the preceding month's rent. This they did not receive and, by their own evidence, permitted it to accumulate. Having thus acquiesced in the plan adopted and followed by the respondent, there was an implied waiver on the part of appellants of the provision of the contract in that respect.

In *Shell Oil Co. v. Miller,* 53 Fed. (2d) 74, the circuit court of appeals for the ninth circuit, in a case similar to the one at bar, used this language:

"And no such compulsion was established in the instant case. Admitting that the 'emergency' might have existed when the first alleged overcharge was attempted, such an 'emergency' could not have continued over a period of months. There was nothing to prevent the plaintiff-appellee's paying the first 'excessive' invoice and then, actively and alertly, threshing out the controversy then and there as to future prices.

"But it did nothing, and said nothing; and it cannot now be heard to complain. The Miller company was well aware of market conditions in Seattle, and had ready access to the Shell Company's 'posted price.' Had the discrepancy complained of existed, a little diligence would have speedily unearthed it.

. . .

"As we have seen, in the instant case, the payments were voluntarily made over a considerable period of time. The plaintiff-appellee knew, or should have known, all the facts necessary for its protection. It was subjected to no duress, nor was it the victim of any fraud."

In this case, the posting of the tank wagon price is admitted, and there is evidence in the record that appellants had seen the postings.

Taking all the evidence together with its attendant circumstances, it seems to us, as it seemed to the trial court, to point unerringly to the conclusion that the deductions, to the extent of three cents per gallon,

were for rent. What appellants received in excess of that amount is immaterial. It was to assist them in meeting competition, and was for their benefit. We are satisfied that appellants have received all that they were entitled to under the contract entered into by them.

The judgment is affirmed.

BLAKE and MAIN, JJ., concur.

TOLMAN, J. (concurring)—I concur because I feel bound by prior decisions.

BEALS, C. J. (dissenting)—For the reasons stated in my dissent in the case of *Jewell v. Shell Oil Co., ante* p. 603, I dissent.