[No. 24137. Department One. April 19, 1933.]

K. F. ROBINSON *et al., Respondents,* v. SHELL OIL
COMPANY, *Appellant.*[1]

*Hyland, Elvidge & Alvord* and *Lafe H. Bond,* for
appellant.

*J. Arnold Cobley, Grady & Velikanje,* and *Stanley P.
Velikanje,* for respondents.

MILLARD, J.—The plaintiffs brought this action to
recover as rental an amount equal to two cents a gallon
on each gallon of gasoline purchased by the plaintiffs
from the defendant. The cause was tried to the court,
which found that,

"Between the first day of March, 1929, and the 31st
day of March, 1931, the defendant sold and delivered
to the plaintiff 107,503 gallons of Shell Gasoline and
by the terms of said service station lease the plaintiffs
became entitled to the sum of 2¢ per gallon as rental

[1]Reported in 21 P. (2d) 246.

thereunder, but during said time no part of said sum was either credited on any month's merchandise statement for the previous month's purchases, or paid in any other manner and the sum of $2,150.06 is now due and owing from defendant to the plaintiffs."

Judgment was entered accordingly, and the defendant appealed.

By written contract executed May 28, 1928, the respondents leased their service station at Sunnyside, Washington, to the Shell Oil Company for a period of five years. The respondents remained in possession of, and operated, the station. Under the terms of the contract, the respondents were obligated to handle exclusively appellant's gasoline, oils, etc. The appellant was obligated to sell gasoline to respondents at a price of at least four cents per gallon less than the appellant's prevailing full market price at the time and place of delivery. The contract also provided for payment of forty-five dollars monthly by the appellant to respondents, as rental for the premises during the life of the lease. On November 15, 1928, the parties executed a "Termination Agreement," by which the contract of May 28, 1928, was

" . . . cancelled and annulled and made of no further force or effect whatsoever from and after the date hereof, and each of the parties hereto fully releases and relieves the other of and from all obligations thereunder hereafter accruing."

On the same date, the parties executed a contract entitled "Service Station Lease," under which the premises were leased by respondents to appellant for a term of five years. The provisions for payment of rental by the appellant to respondents read as follows:

"The rental for the said premises shall be a sum equal to 2¢ per gal. for each gallon of Shell Gasoline purchased by the lessor from the lessee herein, during the term of this agreement. The lessor to be credited

on each month's merchandise statement for the previous month's purchases."

At the time of the execution of the foregoing contract, the parties executed a "License and Consignment Contract." Under this agreement, the appellant subleased the same premises covered by the two contracts above described to the respondents for the purpose of using the same as a service station for handling exclusively Shell gasoline, oils, etc. The license and consignment contract further provided for payment by the appellant to the respondents of a commission of four cents for each gallon of gasoline sold at the respondents' service station; and that, for the gasoline and oils purchased by respondents from appellant, the respondents

". . . shall pay for the same the company's wholesale prices in accordance with the company's wholesale price list as posted by it date of delivery at its depot at Grandview, Washington, payment to be made cash on delivery or subject to such credit as the Company may allow."

That contract was cancelled on or about March 1, 1929. The agreement evidencing the cancellation is entitled "Service Station Sublease." It was executed March 29, 1929. By that contract, the appellant, as sublessor, leased to the respondents the same premises described in the above mentioned contracts for a period of four years, seven months and sixteen days, or for the remainder of the unexpired five-year term for which the premises were originally leased, and which would expire November 14, 1933. The rental payable under the sublease executed March 29, 1929, was one dollar per annum, payable annually in advance.

"As a further consideration for this covenant and agreement, the sublessor promises and agrees at all times while this agreement shall be and remain in full

force and effect to sell and deliver to the sublessee for resale from the demised premises gasoline at a price to sublessee not greater than the tank wagon price for commercial gasoline effective date of sale at Sunnyside, Wash., said tank wagon price being no cents per gallon more (than) the sublessor's tank wagon price for commercial gasoline as determined and posted at sublessor's depot at Grandview, Wash., including Wash. State Motor Vehicle Fuel Tax . . .

"It is further understood and agreed that the certain contract bearing date of (15th) Fifteenth day of November, 1928, is hereby declared to be terminated and rendered null and void."

On or about March 1, 1929, the appellant agreed to deduct an additional one cent from the then existing price basis of gasoline. Confirmatory of that deduction is the appellant's letter of March 29, 1929, to the respondents, stating:

"Supplementary to that lease bearing date the 15th day of November, 1928, and that sublease bearing date the 29 day of March, 1929, the undersigned hereby agrees to pay you each month, a sum equivalent to one cent per gallon for each gallon of Shell Gasoline purchased under and during the term of said sublease."

About June 1, 1929, appellant gave to respondents another deduction of one cent a gallon. That additional deduction was confirmed by appellant's letter of September 4, 1929, to the respondents. In that letter, which reads as follows, it will be noted that the total rental or allowance under the lease and sublease was limited to a deduction of four cents for each gallon of gasoline purchased by the respondents from the appellant.

"Supplementary to that certain lease bearing date the 15th day of November, 1928, and that sublease bearing date the 29th day of March, 1929, the undersigned hereby agrees, effective June 1st, 1929, to pay you each month an additional sum equivalent to one

cent (1¢) per gallon for each gallon of Shell Gasoline purchased during the term of said sublease.

"However, it is expressly understood that your total rental or allowance under the above lease and sublease in no event exceed a sum equivalent to four cents (4¢) per gallon for each gallon of Shell Gasoline purchased during the term thereof."

That is, under their contract with appellant, respondents were entitled to receive, from March, 1929, to June, 1929, two cents for rent and an additional allowance of one cent from the posted tank wagon price at Grandview; and from June 1, 1929, until March, 1931, when appellant and respondents discontinued business with each other, the respondents were entitled to rental of two cents for each gallon of gasoline sold to them and an additional deduction of two cents a gallon from the posted tank wagon price. When the appellant made a delivery of gasoline to respondents, an invoice of the items delivered was received by the respondents, who receipted for the gasoline, oils, etc., covered by the invoice.

We note among the exhibits an invoice of March 1, 1929, for gasoline delivered by appellant to the respondents. It bears the signature of appellant's agent acknowledging payment for the gasoline delivered on that date to respondents. The price charged on that date for the gasoline was fifteen and one-half cents a gallon. From that price of fifteen and one-half cents a deduction of two cents a gallon "less contract allowance," and a further deduction of one cent a gallon "less verbal allowance," were made.

The invoices from March 27, 1929, until the severance of business relations in 1931, show payment by respondents for gasoline at time of delivery at the posted tank wagon price less the agreed deductions. In the column of items delivered appear the words

"Shell Gasoline," followed by the words "Posted Tank Wagon Price," opposite which appear the number of gallons delivered and the price per gallon. One of such invoices, dated March 27, 1929, shows the tank wagon price to be twenty-one and one-half cents. On the next line, underneath the word "price" is shown the numeral "2." On the line immediately underneath that appears the numeral "1." In figuring the amount the respondents were to pay, the two cents and the one cent, making a total of three cents, were deducted from the price on the first line; that is to say, when the posted tank wagon price was twenty-one and one-half cents, there would be deducted from that price the allowance of two cents for rent plus such other allowances as were granted to respondents from time to time, by the appellant.

All of the invoices subsequent to the invoice just described clearly informed the respondents as to the posted tank wagon price and the deductions to be made therefrom, pursuant to agreement of the parties. After July 4, 1930, on the invoices underneath the item "Shell Gasoline (Posted Tank Truck Price)," the further following explanatory language is printed: "Less Adjustment to Conform with Contract." From time to time the deduction of two cents for rent plus two cents was increased temporarily to meet local competitive conditions. All such deductions are shown on the invoices of gasoline delivered to the respondents. The contract was modified in the case at bar, as in *Shell Oil Co. v. Wright,* 167 Wash. 197, 9 P. (2d) 106, so that the rental was deducted at the time of each delivery.

To state the facts in the case at bar is to declare the law applicable thereto. There is no allegation or evidence of fraud or mistake in the making of the contracts. There is no showing of anything approaching

business compulsion or duress. The respondents leased to appellant, May 28, 1928, their service station. Under that contract, appellant was required to pay a monthly rental of forty-five dollars, and to sell gasoline to respondents at a price of four cents less than the market price at the time and place of delivery. That contract was cancelled November 15, 1928, on which date, in lieu thereof, the same parties executed another contract, under which the same premises were leased for a term of five years to the appellant for a rental of two cents per gallon for each gallon of Shell gasoline purchased by the respondents from the appellant. Under that contract, respondents were to be credited on each month's statement for the previous month's purchases. Another condition of the contract was an allowance by the appellant to respondents of a commission of four cents per gallon for each gallon of Shell gasoline at respondents' service station.

Appellant paid the rent, as required by the contract, until March 1, 1929. At that time, the contract was modified. On March 29, 1929, a written contract was executed by the parties, which clearly provided for the price basis, fixing the rights of the parties. The contract provides that the price basis shall be appellant's tank wagon price as posted at Grandview. The posted tank wagon price was proved as in *Shell Oil Co. v. Wright,* 167 Wash. 197, 9 P. (2d) 106, and in *Jewell v. Shell Oil Co., ante* p. 603. The price was determined by appellant's district office at Seattle. That was the price agreed upon by the parties as the gross price, from which allowances were to be made.

There is no ambiguity in the contract which would permit the introduction of oral testimony in explanation thereof. Under the contract as modified, a deduction of two cents was made at the time of each delivery, and the rent was paid at that time. The invoices

are plain. They show the price basis of the gasoline as provided by the contract of March, 1929, that is, the posted tank wagon price at Grandview. The further information appears upon the face of each invoice that from the posted tank wagon price two cents was deducted at the time of delivery of the gasoline to respondents, and the further deduction of such other allowances as were made by appellant from time to time, pursuant to written and oral agreements; that is, under the contract as modified, the rental was payable, and it was so paid, at the time of delivery of each consignment of gasoline. Mr. Robinson admitted that, in February, 1929, appellant's local manager at Grandview informed him that the rental deduction would be made at the time of each delivery of gasoline, and that he knew, starting in February, 1929, and until March 31st, that the deduction of two cents on the invoices was for rent.

It can not be seriously questioned that parties may modify their contracts, as was done in the case at bar. We so held in *Shell Oil Co. v. Wright*, 167 Wash. 197, 9 P. (2d) 106, and *Jewell v. Shell Oil Co., ante* p. 603.

Respondents sought to recover an amount claimed to be due for rental of the station. They admitted that they knew all the time immediately preceding the date on which they brought this action for rental that the deductions were for rent. The position thereafter taken, that they were charged the wrong price for the gasoline (that they thought they were purchasing on the basis of the wholesale price), is just as untenable as the other. As said before, there is no ambiguity as to the price at which the gasoline was to be sold to the respondents. A similar contention was made, unsuccessfully, in *Shell Oil Co. v. Miller*, 53 Fed. (2d) 74, which was cited with approval in

*Shell Oil Co. v. Wright, supra,* in which it was held that the distinction attempted to be made by the plaintiff was one without a difference; that is, that plaintiff was seeking a refund of sums paid by it, which sums should have been deducted from its invoices, but were not.

In no essential particular does the case at bar differ from *Shell Oil Co. v. Wright, supra,* which we cited with approval in *Jewell v. Shell Oil Co., supra.*

In *Shell Oil Co. v. Wright, supra,* was presented the question whether on March 1, 1929, there was a modification of a prior contract to the effect that, instead of a credit memorandum being delivered to the service station operator at the end of each month, a sum equivalent to two cents for each gallon of gasoline delivered to the operator was deducted as rental when the gasoline was delivered to the service station operator. In that case, the tank wagon price was fixed by the contract as the price basis from which deductions were to be made. Some evidence was offered that the same deduction allowed by the oil company to the service station operator was made by the oil company to all other dealers in the same locality selling the oil company's products.

The same questions are presented in the case at bar. There, as in the instant case, the deduction of two cents a gallon for station rental was made at the time of delivery of gasoline to the station operator. We held in the case cited that the price was fixed by the contract of the parties, which price governed in the absence of fraud or mistake; that whether the oil company gave the same deductions to others who did not have contracts as it did to those who had contracts, was not determinative of the question whether the deductions were allowed as rental in one case and not in the other.

The tank wagon price at Grandview, the price fixed by the contract of the parties as that from which the rental and other deductions should be made, was proved. At the time of each delivery of gasoline, the respondents paid for the gasoline the tank wagon price, less rental and other allowances made from time to time. As said above, respondents knew at the time that the rental was thus paid. The parties so dealt with each other until 1931, when the contract was terminated. On facts like those in the case at bar, we said in *Shell Oil Co. v. Wright, supra,* on appeal of the service station operators:

"They voluntarily made the contract, and they could enforce delivery of respondent's products at the tank wagon price and enforce deduction of two cents from each and every gallon as rental. This was done until the contract was terminated. The course of dealing between the parties throughout that time indicated that it was entirely satisfactory to appellants. There is no claim of any fraud on the part of appellants, and there is no showing that there was any mistake or anything approaching business compulsion or duress."

The contract was not ambiguous. The price fixed by the contract is plain, definite. Fraud was not alleged or proved. Clearly, it is unnecessary to cite authority to sustain the conclusion logically following that the trial court erred in admitting evidence relative to the "wholesale price" of the gasoline, and testimony that respondents were told when signing the contract that they would be "kept competitive." The parol evidence rule may not thus be violated and an unambiguous contract thereby rewritten.

The trial court should have sustained the appellant's motion to dismiss the action.

The judgment is reversed, and the cause remanded with direction to dismiss the action.

MITCHELL and HOLCOMB, JJ., concur.

Beals, C. J. (dissenting)—For the reasons stated in my dissent in the case of *Jewell v. Shell Oil Co., ante* p. 603, I dissent.