[No. 24026.  Department Two.  April 19, 1933.]

BERT JEWELL, *Respondent*, v. SHELL OIL COMPANY, *Appellant*.[1]

[1]Reported in 21 P. (2d) 243.

*Hyland, Elvidge & Alvord* and *Charles H. Paul,* for appellant.

*W. H. Sibbald,* for respondent.

Main, J.—This action was brought to recover rent for a gasoline station which, it was alleged, was due and unpaid, and also damages for alleged fraudulent representations. The defendant denied liability, and, as to the cause of action for rent, affirmatively pleaded payment. The cause was tried to the court and a jury, and, at the conclusion of the evidence of the plaintiff, the defendant challenged the sufficiency thereof and moved for a directed verdict. This motion was denied as to the cause of action for rent and sustained as to the cause of action for alleged fraud, and that charge was withdrawn from the consideration of the jury. At the conclusion of all the evidence, the defendant renewed its challenge and asked for a directed verdict as to the cause of action for rent; which motion was overruled. The cause was submitted to the jury, and a verdict was returned in favor of the defendant. The plaintiff moved for a new trial, which motion was sustained. The defendant appeals from the order granting the new trial.

The facts are these: The respondent, Bert Jewell, was the owner and operator of a gasoline station on the Pacific highway about one mile north of the city of Kelso. The appellant, the Shell Oil Company, is a corporation extensively engaged as a wholesaler and distributor of motor oils and gasoline, one of its division offices being in the city of Seattle. May 20, 1929, by written contract, the respondent leased his gasoline station to the appellant for a period of five years, and

by the terms of the lease the station was to be operated by him. In the lease, it was provided that the respondent should sell exclusively the appellant's products. Paragraph four of the lease provided that the price of gasoline purchased by the respondent should be the ''Tank Wagon price for commercial gasoline as determined and posted at Lessee's depot located at Kelso, Washington.'' The paragraph of the lease that covered the rental of the station was this:

''The Rental for said equipment shall be a sum equivalent to 4 cents for each gallon of Shell gasoline purchased by the Lessor from the Lessee herein during the term of this agreement, said sum to be credited to the Lessor on each month's merchandise statement for the previous month's purchases.''

By this provision, it will be seen that the respondent, for the rental of his station, was to receive gasoline at four cents per gallon less the tank wagon price as posted at Kelso, and this sum was to be credited to the respondent on each month's statement for the previous month's purchases. The parties began operating under the lease and continued for about a year and seven months, when the respondent sold his station and thereafter brought this action, claiming that the rent had not been paid.

The price of gasoline, as posted at Kelso, was determined by the division office at Seattle, which, from time to time as the price of gasoline fluctuated, issued what is called ''Northern Division Refined Oil Prices.'' This sheet contained a list of approximately sixty-five cities or towns in the state of Washington within the Northern Division where the appellant had local offices and depots for the local distribution of its products. Opposite the name of each city or town was the tank wagon price to be posted at that depot.

During the time that the respondent was operating

the station, he purchased from the appellant approximately fifty thousand gallons of gasoline, and when each purchase was made, he paid cash therefor and received an invoice, which he signed. Upon the top line on the invoice, under the head of "price," was the posted tank wagon price at Kelso. On the next line was four cents, and, in figuring the amount he was to pay, the four cents was taken off of the price on the first line. In other words, if the price on the first line, the posted tank wagon price, was eighteen and one-half cents, there was deducted from this four cents, and the respondent paid therefor fourteen and one-half cents.

The invoices show that, for every gallon of gasoline purchased by the respondent, he received at least a deduction of four cents from the tank wagon price as posted in Kelso. The respondent made no complaint or claim that he was not getting his rent by the deduction of the four cents, until approximately a year and seven months after the date of the contract when he was preparing to dispose of his station. The evidence shows without dispute that there was posted in a conspicuous place in the office of the appellant at Kelso, and also in its depot, the price of gasoline, and that this price corresponded with the price fixed by the refined oil price sheets sent out from the division office in Seattle.

The employe of the appellant, who was present when the respondent signed the contract, testified that the latter was told that, if he paid the price for the gasoline, the deduction of four cents would be made on each invoice to take care of the rent. This the respondent disputes. He says, however, that he did not at any time during all the months that he was operating the station demand his rent or complain that it was not being paid, because he did not need the money.

Whether the trial court erred in granting the new trial depends upon whether, so far as the disposition of this appeal is concerned, there was evidence to take the case to the jury on the question of the rent; because, if there was no dispute in the evidence, there would be no question for the consideration of the jury. The fact that the lease provided that the four cents was to be credited on each month's merchandise statement for the previous month's purchases does not necessarily show that the rent had not been paid, even though no such statements were issued. The gasoline having been paid for in cash, there was no occasion for the monthly credit memorandum.

If the evidence shows without dispute that the rent was paid by the deduction of four cents from the posted tank wagon price upon each delivery, and that this was for the rent, it would necessarily follow that the respondent could not prevail. The witnesses for the appellant testified that the four cents deduction was for rent, and the respondent testified that he did not know what it was for. The inference from the fact that the respondent paid cash for each delivery, and that the price paid was four cents less than the posted tank wagon price at Kelso, would be that the four cents deduction was for rent. There is no claim that there was any fraud or duress, so far as the cause of action for rent is concerned.

In *Shell Oil Co. v. Miller*, 53 Fed. (2d) 74, the circuit court of appeals for the ninth circuit, in a case in all essential particulars like the one now before us, held that, as a matter of law, the rent had been paid, and that there was no question to be submitted to the jury. It was there said:

"As we have seen, in the instant case, the payments were voluntarily made over a considerable period of time. The plaintiff-appellee knew, or should have

known, all the facts necessary for its protection. It was subjected to no duress, nor was it the victim of any fraud.''

In the case of *Shell Oil Co. v. Wright,* 167 Wash. 197, 9 P. (2d) 106, which was likewise in all essential particulars like the one here presented, except that, in that case, the trial was to the court and not to the jury, it was said:

''The contracts having been modified so that the rental of two cents per gallon was deducted at the time of each delivery, unless appellants desired to .contest that the two cents deduction on each gallon at the time of delivery was for rental or an adjustment of the lease, it was evidence of such payment; and if not, their duty was to object or protest. *White v. Little Co.,* 118 Wash. 582, 204 Pac. 186; *McManus v. Sawyer,* 231 Fed. 231; *Shell Oil Co. v. Cy Miller, Inc.,* 53 Fed. (2d) 74 (a case which fits this very closely and is very convincing).''

The cases of *Griffith v. Hicks,* 150 Ark. 197, 233 S. W. 1086, 18 A. L. R. 882, and *Estey Organ Co. v. Lehman,* 132 Wis. 144, 111 N. W. 1097, 11 L. R. A. (N. S.) 254, 122 Am. St. 951, are to the same effect. It necessarily follows that whether the rent was paid did not present a question for the consideration of the jury, because from the evidence but one conclusion could reasonably be made.

Attention is called in the brief of appellant to the fact that on a few of the invoices a pencil line was drawn through the top line under the price. But this is immaterial, because in all of those invoices the respondent received his gasoline at four cents less than the tank wagon price, as posted, and the price through which the pencil line was drawn was that posted price. The fact that the pencil line appeared was caused by one of the truck drivers misunderstanding instructions.

Attention is also called to the fact that on some of the

invoices, in addition to the four cents, there were other deductions. But this is likewise immaterial, because, if the respondent received more than the four cents deduction, he is in no position to complain. From the evidence, it appeared that the additional deduction was made in order that the respondent might meet at the time local competitive conditions. The trial court should have sustained the challenge to the sufficiency of the evidence and directed a verdict in favor of the appellant upon the cause of action for rent.

█ Upon the cause of action for fraud, which was withdrawn from the jury, little need be said. That cause of action was based upon claimed representations made to the respondent at the time he signed the lease that his profits, in addition to the four cents, would be a certain number of cents, and he claims that his profits were one-half cent per gallon less than it was represented they would be, and by this cause of action seeks to recover two hundred fifty dollars. The statement as to what the respondent's margin of profit would be, if it were made, was a mere matter of opinion as to something in the future, and was not actionable. *Davis v. Masonic Protective Association,* 94 Wash. 406, 162 Pac. 516. Other cases might be cited, but the rule is so well settled as not to require the multiplication of authorities. The trial court correctly withdrew from the jury this cause of action.

The judgment will be reversed, and the cause remanded with directions to the superior court to dismiss the action.

STEINERT and BLAKE, JJ., concur.

TOLMAN, J. (concurring)—I concur only because I feel that I am bound by the decision of this court in *Shell Oil Co. v. Wright,* 167 Wash. 197, 9 P. (2d) 106.

BEALS, C. J. (dissenting)—Being of the opinion that the "tank wagon price" established by appellant, and which appellant used as a basis in adjusting its accounts with respondent, was not set up by appellant in good faith, but was arbitrarily fixed by it for the purpose of circumventing its contract with respondent and probably similar contracts with other persons, I dissent from the conclusion reached by the majority.

It seems to me that the "tank wagon price," which was arbitrarily fixed by appellant to suit its own ends, amounts to a "snare and a delusion," and evidences fundamental bad faith on the part of appellant in carrying out its contract with respondent. This phrase, as used by the parties to this action, should be held to mean the price at which appellant sold to its general customers gas from its tank wagon. I am convinced that, as construed by appellant, the words mean no such thing, but are the equivalent of a figure which appellant fixed high enough so that it could give to respondent and others similarly situated a paper discount, which it called rental, and at the same time give to other purchasers an equal discount or discounts under some other name. It does not appear that appellant ever sold, or expected to sell, a single gallon of gas at its "tank wagon price"; this price was wholly fictitious, set up to be disregarded.

The principle of *stare decisis* does not persuade me to concur in the foregoing opinion, as I believe that the facts in this case differ from those heretofore considered by this court in cases of a similar nature to a sufficient degree to render that rule of law inapplicable.

I accordingly dissent from the conclusion reached by the majority.