[No. 24313. Department Two. July 27, 1933.]

M. A. FERGUSON *et al.*, *Respondents*, v. ASSOCIATED OIL COMPANY, *Appellant*.[1]

*Eggerman & Rosling,* for appellant.
*LaBerge, Cheney & Hutcheson,* for respondents.

[1]Reported in 24 P. (2d) 82.

Main, J.—This action was brought for an accounting and to have a deed declared to be a mortgage. The cause was tried to the court without a jury, and resulted in a judgment to the effect that the deed was not a mortgage, and that, on the accounting feature, the plaintiffs were entitled to $583.57. From this judgment, the plaintiffs did not appeal, and the defendant appealed from that part of the judgment so far as the accounting was concerned.

The facts may be summarized as follows: For some years prior to March 3, 1928, Mike Ferguson and Claude Ferguson operated a gasoline service station at Toppenish, in Yakima county, under the name of Ferguson Brothers, under a lease from the then owner. On the date mentioned, the appellant, the Associated Oil Company, acquired the title to the property and leased the same to the respondents for a period of ten years. This lease gave the respondents an option to purchase the property, and provided that, during the term of the lease, the respondents should handle the products of the appellant exclusively. In the lease, time was made the essence thereof, and for failure to comply with any of its provisions it was subject to forfeiture.

Under this lease, the respondents operated the station until February 14, 1929, and on that date the parties entered into what is called a sales contract, which, among other things, provided:

"Buyer [respondents] agrees to pay to seller [appellant] at seller's office at Spokane, Washington, for all deliveries hereunder at seller's posted retail market price, including tax, to consumers generally, at the place of delivery on the day of delivery less four cents (4c) per gallon."

At the time the sales contract was entered into, another agreement was made between the parties, by

the terms of which the respondents were allowed an additional one cent per gallon on account of the maintenance expenses, and which was subject to be discontinued by the appellant without notice. After the sales agreement was executed and the parties had begun to operate thereunder, the respondents from time to time made complaint that they were not getting the reduction provided for in the contract. The major complaints, as one of the respondents testified, began about July 15, 1929. These complaints continued until on or about May 27, 1931, on which day there was delivered to the respondents several hundred gallons of gasoline, and after its delivery they refused to pay the price demanded therefor, but tendered what they thought they should pay under the terms of the contract. This was refused, and on the following day the present action was instituted.

■ The first question presented is the interpretation to be placed upon that provision of the sales contract above quoted. It will be observed that it was there provided that the buyer agrees to pay at the seller's Spokane office for all deliveries ''at seller's posted retail market price, . . . to consumers generally, at the place of delivery on the day of delivery less four cents (4c) per gallon.'' At the time the contract was executed, the retail market price generally prevailing in Toppenish and the appellant's posted retail market price at Yakima, where it had an office, were the same. Subsequently, the retail market price at Toppenish was generally below the posted retail market price at Yakima, and it is to recover this difference that the action was brought. There was no retail market price posted at Toppenish.

The contract expressly provides that the buyer shall pay the posted retail market price ''at the place of delivery on the day of delivery.'' The place of de-

livery was Toppenish. There being no posted retail market price at that place, the standard prescribed in the contract must be regarded as having failed, and such standard having failed, the price to be paid would be determined by the usual tests and proof, which would be the retail market price generally prevailing at the time and place of delivery upon each delivery. *Taylor Oil & Gas Co. v. Pierce-Fordyce Oil Ass'n*, 226 S. W. (Tex. Civ. App.) 467.

The respondents paid cash upon each delivery, and, as indicated, paid more than the retail market price generally prevailing in Toppenish at the time, and they were entitled to recover this difference if the payments were made under what is called "business compulsion," which is the liberal view of the old doctrine of duress. The rule is that, where money, illegally exacted, is paid to prevent the sacrifice of capital investments, and made under business compulsion, it may be recovered back, if paid under protest. *White v. Little Co.*, 118 Wash. 582, 204 Pac. 186; *Jacobson v. Nicholas*, 155 Wash. 234, 283 Pac. 684; *Ramp Buildings Corp. v. Northwest Building Co.*, 164 Wash. 603, 4 P. (2d) 507, 79 A. L. R. 651.

Applying the rule to the present case, if the payments were not made as demanded from time to time as the deliveries occurred, the respondents were in the position where a business which they had built up over a period of years could be sacrificed by the forfeiture of the lease, and they would also lose their optional right to purchase. The payments were made under complaints which amounted to protest, and, we think, were made under business compulsion. In order for a person making such payments to recover, he must disaffirm his action upon the removal of the duress. *Duke v. Force*, 120 Wash. 599, 208 Pac. 67, 23 A. L. R. 1354. That rule is analogous to the one which requires

a person who seeks to repudiate a contract on the ground of fraud to act promptly upon the discovery of the fraud. *Deibel v. Jefferson Bank,* 200 Mo. App. 541, 207 S. W. 869; *Oregon Pac. R. Co. v. Forrest,* 128 N. Y. 83, 28 N. E. 137. In the present case, the compulsion was continuous up to the time the respondents refused to pay the amount demanded, and the action was brought on the following day.

The appellant places special reliance on the cases of *Jewell v. Shell Oil Co.,* 172 Wash. 603, 21 P. (2d) 243; *Robinson v. Shell Oil Co.,* 172 Wash. 611, 21 P. (2d) 246; and *Searl v. Shell Oil Co.,* 172 Wash. 621, 21 P. (2d) 249, recently decided. But in those cases, in addition to the fact that they were actions for rent, they differ from this, in that in none of them had the standard prescribed in the contract failed, as here. The respondents upon the trial were permitted to introduce testimony as to what the understanding of the parties was at the time the sales contract was entered into with reference to the meaning of the retail market price, on the theory that that contract was ambiguous. But this testimony we have entirely disregarded, because it appears to us there is no ambiguity in the contract, but that its terms are plain and explicit. There is no controversy here over the amount that the respondents were entitled to recover, if recovery could be had at all, except in one particular which will subsequently be mentioned.

The appellant makes the further contention that there was an accord and satisfaction by reason of the fact that the respondents paid cash for the gas upon each delivery. But we see nothing in the case to call for the application of that doctrine.

Finally, it is contended that the judgment is excessive, in that the sum of $37.15, which represents overpayments made prior to September 10, 1929, was

included in a settlement made in the office of the then attorneys for the respondents at Yakima, at which the respondents and a representative of the appellant were present. The trial court allowed this item on the theory that that settlement only covered two items, and did not include the matter presented in this action. From the testimony, we think the trial court was correct in the view that, at the meeting mentioned, only two items were under discussion, and that the question of the construction of the sales contract with reference to retail market price was not there involved. It not being so involved, it follows that that settlement did not include the item complained of and furnishes no bar to its recovery.

The judgment will be affirmed.

BEALS, C. J., TOLMAN, and BLAKE, JJ., concur.

STEINERT, J. (dissenting)—I do not believe that the doctrine of business compulsion is applicable to the facts of this case. The lease was executed March 3, 1928. On February 14, 1929, the sales contract was made. Shortly thereafter, complaints on the part of the respondents began, growing in intensity and becoming particularly emphatic during the period between July 15, 1929, and May 7, 1931. It will thus be seen that, over a period of at least a year and ten months, the respondents were receiving and paying for the gasoline at the prices charged for and demanded by appellant. By July 15, 1929, at the latest, respondents knew that, under their own understanding of the contract, they were being overcharged, and would continue to be overcharged.

The courts were as available to them then as they were when this action was begun. Had they sought relief, they would have been as much entitled to it, in character, at that time as they are now. Yet they were

content to go on for a period of nearly two years longer, paying according to appellant's charges for the gasoline, and now, after four years of the term of the lease have expired, they seek recovery for the accumulated amount over the extended period. If they feared a forfeiture of their lease at the time they brought the present action, they must have feared it when they made the payments long before; in fact, that is their very theory of business compulsion. That question could have been as well raised at the beginning of the difficulty as it was at the time when respondents themselves made it an issue by their complaint. Under the reasoning of the majority opinion, the respondents might have gone on complaining for the remainder of the ten-year term, at the same time paying the prices charged, and then, at the end of ten years, plus the additional period of the statute of limitations, brought suit to recover the compulsory overcharge.

I do not believe that the rule affording relief against business compulsion contemplates any such delay on the part of the complainant. Under the analogy of the rule which requires a person who seeks to repudiate a contract on the ground of fraud to act promptly upon the discovery of the fraud, one who is subjected to involuntary payments under business compulsion should be required to act promptly when the situation becomes apparent to him. Any other rule will simply afford a basis for the bringing of suits to inquire into agreements to pay money, long after they have been acted upon by both parties and the amounts claimed by one have been paid by the other.

I therefore dissent.